The State of Iowa v. Ostrander.

## THE STATE OF IOWA v. OSTRANDER.

1. **Grand jury:** NUMBER OF JURORS. When a grand jury was called to be impanneled, the court ordered a defendant, who was in custody, to be brought in, that he might have an opportunity, under the statute, to challenge the jury: his challenge to one grand juror was sustained; whereupon the court directed said juror, "when the case against the prisoner came up for examination, that he must retire from the grand jury room, and take no part in its examination:" the juror did retire, as instructed by the court; and a bill of indictment was found by a grand jury consisting of fourteen jurors: *Held*, that the grand jury was a valid body, and the indictment a valid indictment.

    *Argu.* 1. —— Twelve jurors, at common law and under our statute and the statutes of all the States, is the essential number necessary to the finding of an indictment.

    2. —— There is no provision of the law declaring that the entire fifteen jurors must be present at the finding of the bill: the statute has reference rather to the number which shall constitute the jury than to the number necessary to constitute a quorum, or to the mode in which they shall transact business.

    3. —— The indictment would have been valid at common law.

    4. —— The statute, which points out all that is required to be done, simply directs the juror challenged not to take part in the case, and fails to make any provision or to give any authority for calling a temporary juror.

2. —— CASE COMMENTED ON. The case of *Norris House* v. *The State*, 3 G. Greene, 513, neither affirmed nor overruled; approved in so far as it

The State of Iowa v. Ostrander.

holds that it is proper for the court to impannel fifteen jurors as a grand jury, and keep the panel full when a juror is discharged; doubted as to the holding that an indictment found by less than fifteen jurors is necessarily invalid.

3. —— NUMBER. When challenges are interposed and sustained by one defendant as to three or a less number of jurors, the grand jury would still remain a valid body: *aliter* when more than three such challenges are made by one defendant and sustained by the court.

4. —— TIME OF OBJECTION. A defendant held to answer for a criminal offense is not permitted by the statute to assail an indictment on the ground that it was not found by a grand jury impanneled in the manner prescribed by law. The objection should be taken at the time the jury is impanneled. Rev., 1860, §§ 4619, 4693.

5. —— IMPANNELED. The word *impanneled*, as applied to the formation of a jury, means the final act by the court ascertaining who should be sworn immediately preceding the administration of the oath to the jurors.

6. **Change of venue: PRESUMPTIONS.** The Supreme Court will not review the exercise of discretion by the District Court in ruling upon a motion for a change of venue upon the ground of prejudice of the people against the defendant in a criminal action, when an abuse of such discretion is not made manifest.

7. **Continuance: ABSENCE OF ATTORNEY.** The absence of a defendant's attorney for any cause is not good ground for the continuance of a criminal action, where sufficient time is given to procure another attorney and enable him properly to prepare the defense for the trial.

8. **Jury: DISCRETION: EXERCISE OF.** The discretion vested in the District Court should be carefully exercised in passing upon the applications of regular jurors to be excused from service as such; but such exercise will not be reviewed in the Supreme Court, unless it shall be such as to violate the essential nature and security of the trial by jury, or deprive a party of a substantial right.

9. **Practice: EXCEPTION.** The Supreme Court will not review a ruling of the District Court to which no exceptions were taken at the time it was made.

10. **Jury: OPINIONS.** Hypothetical opinions founded on rumor do not disqualify a petit juror.

11. —— OATH. The record of the trial of an indictment recited that "the jury were duly impanneled and sworn well and truly to try the cause (naming it), and a true verdict give thereon according to the evidence

and the best of their ability:" *Held*, 1. That, in the absence of a record showing the contrary, it will be presumed that the oath was in due form; 2. That, assuming that the record set out the oath literally as it was administered to the jury, it was sufficient.

12. Criminal law: SERVICE OF NOTICE. It is sufficient if the notice contemplated by section 4786 of the Revision of 1860 is served on the defendant personally; and the affidavit of the person making the service is sufficient evidence thereof.

13. —— VARIANCE IN NAMES. Among the names of the witnesses indorsed on the back of the indictment was the following: "Lovina Umpstead;" the State introduced a witness whose name was "Lovina Olmstead:" *Held*, That, in the absence of any showing of prejudice to the defendant, the variance was not material.

14. —— THREATS: CONFESSION. Threats made by a party on the day preceding an alleged confession by a person who was not present when the confession was made, especially when such threats were rebuked in the presence of the prisoner by a magistrate and others, did not render the alleged confession inadmissible as evidence against the prisoner.

15. —— EVIDENCE: MINUTES OF TESTIMONY. The minutes of a witness' evidence before the grand jury cannot be introduced on the trial for the purpose of impeaching him, without giving him an opportunity to deny their correctness or state what he did testify to before the grand jury. When it is claimed that there is a conflict between the evidence of a witness before the grand jury and his evidence before a traverse jury, his attention must be drawn to his former testimony, and the foundation for his impeachment laid in the usual and regular manner.

16. —— LIMIT OF TESTIMONY. The State, in the trial of a criminal action, is not confined in the examination of a witness to the points on which he was examined before the grand jury.

17. —— AX A DEADLY WEAPON. A person who uses an ax as a weapon of attack upon another, is presumed by the law to be animated by a criminal intent.

18. —— SUPPRESSION OF EVIDENCE. A failure to call all the witnesses named on the back of an indictment on the trial of a criminal cause, is not such a withholding of evidence by the State as to warrant the trial jury in presuming that such evidence would be favorable to the defendant.

19. —— REASONABLE DOUBT. In criminal causes, full and satisfactory proof is required: mere weight of evidence is not sufficient, unless it excludes all reasonable doubts as to the guilt of the prisoner. The proof of guilt must be inconsistent with any other rational supposition: the

The State of Iowa v. Ostrander.

doubt must be real, and not captious: it must not be a forced or artificial doubt: it must, without being sought after, fairly and naturally arise in the mind, after comparing the whole evidence and deliberately considering the whole case. If, upon such consideration, the minds and consciences of the jurors are not abidingly and firmly satisfied of the defendant's guilt — if moral certainty is not produced — if the judgment wavers and oscillates — the jury should give the accused the benefit of the doubt thus arising, and acquit him.

*Appeal from Fayette District Court.*

MONDAY, JUNE 5.

INDICTMENT FOR MURDER: NUMBER OF JURORS NECESSARY TO CONSTITUTE VALID GRAND JURY: CHANGE OF VENUE: CONTINUANCE: REFUSING ATTACHMENTS FOR PETIT JURORS: HYPOTHETICAL OPINION FOUNDED ON RUMOR DOES NOT DISQUALIFY PETIT JUROR: MODE AND ORDER OF CHALLENGING PETIT JURY; OATH TO JURY IN CRIMINAL CASE: WITNESSES WHOSE NAMES ARE NOT INDORSED: MINUTES OF THE GRAND JURY AS EVIDENCE: ADMISSIONS MADE UNDER THREATS AND PROMISES: INSTRUCTIONS: DEADLY WEAPONS: REASONABLE DOUBTS, &C. — On the 10th day of June, 1862, the grand jury of Fayette county presented a bill of indictment against the defendant, charging that on the 20th day of October, 1861, he, by means of an ax, had willfully, deliberately, premeditatedly, and of his malice aforethought, murdered his wife. Plea — Not guilty. Trial by jury, who rendered a verdict: *Guilty of murder in the second degree.*

After overruling a motion for a new trial, the court pronounced judgment, sentencing the defendant to imprisonment in the penitentiary for life. The defendant appeals.

The points made for consideration are so numerous and dissimilar, and the facts relating to each so disconnected, that brevity and perspicuity will alike be promoted by stating in the opinion the facts bearing upon each question

separately and in immediate connection with the decision of the question itself.

*Isaac L. Allen,* Attorney-General, with whom *Milo McGlathery,* District Attorney for the 10th District, for the State.

*Wm. McClintock* for the defendant.

DILLON, J. — I. The first question is, *whether the indictment was found by a legally constituted grand jury?* The bill was found and filed June 10th, 1862. On the 12th day of June, and before pleading to the indictment, the defendant filed a motion to quash or set aside the same, because it was found by a grand jury consisting of only fourteen members.

*1. GRAND JURY: number of jurors.*

*Statement of facts.* — On the hearing of this motion, the court certifies in a bill of exceptions that the following facts were proved: When the grand jury were called to be impanneled, the judge ordered the defendant, who was in custody, to be brought into court, that he might have an opportunity (under the statute, Rev., § 4611) to challenge the grand jury. His challenge to one Johnson, a grand juror, was sustained, whereupon the court " directed the said Johnson, that when the case of the defendant came up for examination that he must retire from the grand jury room, and take no part in its examination." The court did not fill the vacancy thus caused. Johnson, the grand juror, did retire when the defendant's case was called up, and no other person was appointed or put in his place. And the court certifies that the defendant's case was examined, and the indictment against him was found and returned by a grand jury composed of only fourteen members.

The motion to set aside the indictment being overruled, and proper exceptions taken, the correctness of this ruling

is the first question presented. This question, confessedly difficult and important, has had a most careful consideration. Although the question is one essentially of statutory construction, yet every authority either in England or this country bearing upon it has been examined, that the design of the statute might the better be understood.

*Constitutional and statutory provisions applicable to the question.* — By the Constitution (Bill of Rights, § 11), the defendant could not be held to trial, " unless on presentment or indictment by a grand jury." The *number* necessary to constitute a grand jury and their mode of organization, are not prescribed by the Constitution. These matters, therefore, are left to the legislature. Under the law, prior to the Code of 1851 (Rev. Stat., 1843, p. 296, § 2), "*twenty-three* persons," as at common law, were to be summoned " to serve as grand jurors, any sixteen of whom shall be sufficient to constitute a grand jury," and "any twelve" may find a bill. Id., § 3. The number of the jury was changed by the Code of 1851, section 1642 whereof (Rev., § 2732) was as follows: "When grand jurors are to be selected their number must be fifteen, and they shall serve for one entire year thereafter." (See also, Rev., § 4608.) Section 4609 of the Revision provides, that " if the fifteen do not appear (at court), or if the number appearing be reduced from any cause, either then or afterwards, to less than fifteen, the court may order the sheriff to summon a sufficient number of qualified persons to complete the panel." "Persons thus summoned by the sheriff (§ 4610), to supply a deficiency in the requisite number of grand jurors, serve only during the term at which they are summoned." "A defendant held to answer may challenge," &c. Id., § 4611. "If a challenge to an individual grand juror be allowed, he shall not be present at or take any part in the consideration of the charge against the defend-

ant." Id., § 4617. An indictment cannot be found without the concurrence of *twelve* grand jurors." Id., § 4645.

*Construction of the statute.* — In cases where a challenge is sustained to an individual juror, there are no provisions in terms directing the court to summon another juror in his place. Persons summoned under section 4609 serve in the place of absentees, and serve for *the term.* Where a challenge by a defendant to an individual juror is sustained, he does not cease to be a member of the grand jury, and the only effect is that " he shall not be present or take any part in the consideration of the charge against the defendant," by whom the challenge was interposed.

The statute provisions in relation to the number of grand jurors, were considered in the case of *Norris House* v. *The State,* 3 G. Greene, 513. In that case fifteen jurors were duly impanneled on the first day of the term. On the next day one of the fifteen was discharged by the court for intoxication, as was affirmatively shown by the record, and the remaining fourteen found and presented the indictment, the validity of which was in question in that case. It was there ruled that the court should have summoned another juror in the place of the one discharged; that under the above statute fifteen persons were necessary to constitute a valid grand jury, and that the indictment having been found by a jury composed of fourteen persons only was void against the accused, he not having had any opportunity to challenge the grand jury.

2.— (*infra,* page 445.)

In view of the authorities, some of which are cited below, it may admit of some question whether the decision was correct so far as it held that the indictment, though twelve jurors concurred in its finding, was void. That case is, however, clearly distinguishable from the one now before us; and, consistently with the decision there made, the proceedings of the District Court in this one may be affirmed.

Our statute will be more correctly understood by a

brief reference to the common law rules, with respect to the number and proceedings of grand jurors. The earlier authorities show that the accusing body, now called the grand jury, originally consisted of only twelve persons, and all were required to concur. (Bract., B. III, 116; Mirrour, ch. 1, sec. 12; Hallam Mid. Ages, ch. 8 and note III thereto, "Trial by jury;" and see other authorities and statutes cited, 2 Lead. Crim. Cases, 321.) The number was subsequently enlarged to twenty-three, which was the maximum. A jury of twenty-four or more was illegal. (2 Burr., 1028; *King* v. *Marsh*, 1 Nev. and Perry, 187; *S. C.*, 6 Ad. & El. 236; *S. C.*, with notes, 2 Lead. Crim. Cases, 317; *S. P.*, *Miller* v. *The State*, 33 Miss. (4 George), 356; followed *Box* v. *The State*, 34 Id., 614; *People* v. *Thurston*, 5 Cal., 69; Whart. Crim. Law, 2d ed., 169, 170.)

But from the earliest authorities down, it is shown that a presentment by twelve is good, although no more than twelve be impanneled, or if more are impanneled although all the other jurors dissent, but a bill "presented by a lesser number than twelve is clearly ill." (*Clyncard's Case*, Cro. Eliz., 654; 2 Hale, P. C., 151, 154; Co. Litt., 126, *b;* Comyn Dig., Indictment (A); 2 Hawk. P. C., 299; followed by Viner Abridg., Indictment (H.), 9; 1 Chitty Crim. Law, 306; *Com.* v. *Wood*, 2 Cush., 149.) In other words, at common law the number of grand jurors is indefinite. The jury may consist of any number between twelve and twenty-three.

Conformable to these authorities is the statement by Blackstone (4 Com., 302, 306): "As many as appear upon the panel are sworn upon the grand jury, to the number of twelve at least, and not more than twenty three, that twelve may be a majority." "To find a bill, there must at least twelve of the jury agree." And so by the other elementary writers. (See Chitty Cr. Law, 106; Story on Const., § 1784; Archb., 161–164; Whart., 2d ed., 169, 170.)

So that it was and is an established principle of the common law that no subject can be convicted of a capital offense unless by the concurring voices of twenty-four of his neighbors and peers, twelve at least on the grand jury assenting to the accusation, and twelve more finding him guilty on his trial. (4 Bl. Com., 306.)

The use of the word "jury" in the common law suggests and implies the number twelve. Sir Edward Coke thinks "that the law delighteth in the number twelve." (Co. Litt., 155, *a.*) At all events, *twelve* was always the essential idea of a grand jury as well as of a petit jury

The requiring of twenty-three to be summoned, though we have found no reasons stated in the books, was probably in order to make sure of obtaining a full jury of twelve; possibly to be sure of having a few over, so that if the accused should have a friend or two upon the panel, the course of justice might not be defeated; possibly to prevent a dissolution of the jury by the death or sickness or absence of one or more of the jurors, or it may be for all of these reasons combined. (See 2 Hale, Hist. Com. Law, 137, where similar reasons are assigned for requiring more than twelve jurors to be *returned* in civil cases.)

We conclude that the grand jury, in the case at bar, was a valid body, and the indictment a valid indictment:

1st. Because *twelve jurors*, which, at common law and under our statute and the statutes of all of the States, is the essential number, concurred in finding it.

2d. Because there is no provision of the law declaring that the entire fifteen must be present all of the time, and at the time of finding an indictment, or that unless- thus present the bill or finding is void; and because the statute has reference rather to defining the number which shall constitute a grand jury, substituting a fixed number for the indefinite common law number, than to the number

.necessary *to constitute a quorum, or to the mode in which they shall transact business.*

3d. Because the indictment would, as we have seen, have been valid at common law, and because the authorities in other States (some of the most pertinent of which we condense in the form of a foot note) strongly confirm the correctness of the conclusion above announced.[1]

[1] The statute of *California* directs that, "where, of the persons summoned, not less than seventeen and not exceeding twenty-three attend, they shall constitute the grand jury. If, of the persons summoned, *less than seventeen* attend, they shall be placed on the grand jury, and the court shall order the sheriff to summon a sufficient number to complete the panel." Comp. Laws of Cal., 354, § 9.  This is substantially identical with the Iowa statute (Rev., § 4609, *supra*), except that ours fixes the number at fifteen, instead of seventeen, or from seventeen to twenty-three.

A grand jury consisted of twenty-three persons, nine of whom were challenged by the prisoner for cause, and the challenge was sustained, and the nine jurors so challenged were ordered by the court, as was done in the case at bar, not to be present in the grand jury room during the investigation of the case against the prisoner.  The bill, as in this case, was found by the remaining *fourteen*, and though the point was made by the prisoner's counsel, that under the statute *less than seventeen* could not compose the jury, it was ruled by the court that the grand jury was legally constituted and the indictment good. *The People* v. *Butler*, 8 Cal., 435, 1857; following *People* v. *Roberts*, 6 Id., 214, 1851, in which it was held that seventeen need not be present at the finding of an indictment, provided twelve concur in finding it.  These cases are directly in point.

In *Louisiana*, formerly (as we learn from the quite recent case [1857] of *The State* v. *Swift*, 14 La. Annual Rep., 827), as the law stood, no less than twelve nor more than twenty-three constituted the grand jury; twelve being necessary for the transaction of business.  By statute the number of grand jurors was fixed at sixteen; the concurrence of twelve being necessary to find a bill.  It was held that it was not necessary that sixteen should be in attendance at the time of finding an indictment; "that number not being sacramental."  The object of the statute being to substitute a definite for an indefinite number, not to regulate the mode of transacting business; and it was expressly adjudged that a grand jury at which only thirteen were present could find a valid bill. *State* v. *Swift, supra.*

So in *Alabama*, the statute directed that there should be drawn *not less than thirteen* and not more than eighteen names who should constitute the grand jury.  Thirteen were drawn and impanneled, but *only twelve* appeared and acted at the Special Term at which the bill was found; and it was holden, though the court had the power to have filled up the place of those absent, that the bill thus found by the twelve was valid, the jury not being dissolved by the death or absence of a single member. *State* v. *Miller*, 3 Ala. (N. S.), 343, 1842.

So in *Indiana*, the statute directed eighteen to be drawn as grand jurors; held, that twelve might be impanneled and would constitute a valid grand jury. *Hudson* v. *The State*, 1 Blackf., 317, 1824.

So in *Tennessee*, the statute enacted that "the first *eighteen* drawn shall be a grand jury," and twelve may find a bill.  Held, that its object was to

4th. And especially because the statute, which points out all that is required to be done, simply directs the juror challenged not to take part in that case, and fails to make any provision or to give any authority for calling a temporary juror.

In reaching this conclusion, we neither affirm nor overrule the *Norris House case.* That the District Courts may *2. —— case commented on (supra, page 441).* not be in doubt as to the proper practice, we may state that the case is clearly right, so far as it holds it to be proper for the court to impannel *fifteen* jurors, and to keep the panel full whenever a juror is discharged. We further observe, that, if three challenges *3. —— number.* or less, interposed by the same defendant, are sustained, there still remains a valid grand jury, who, if twelve concur, may find a good bill; and the places of those challenged need not, and, perhaps, should not, be filled by temporary jurors for the particular case.

limit the number to be sworn, and not to alter the law that constitutes twelve a jury. *Pybos* v. *The State*, 3 Humph., 49, 1842.

So in *North Carolina*, the statute was the same, viz. : "the first *eighteen* drawn shall be a grand jury for the court." As the statute did not declare void a bill found by less than eighteen, it was held that the statute was directory, and that twelve, as at common law, might find a valid indictment. "It would be a singular anomaly," observes GASTON, J., "that the concurrence of twelve out of eighteen is sufficient to prefer an accusation, but that twelve out of fifteen is undeserving of notice." *State* v. *Davis*, 2 Iredell (Law), 153, 159, 1841. Same ruling, see *Com.* v. *Wood*, 2 Cush., 149. 1848 ; *State* v. *Jacobs*, 6 Tex., 90, 101.

Such cases are to be distinguished from those in which it is held that the presence of an illegal juror, no matter how numerous the body may be, no matter if there be twelve good jurors remaining, vitiates the whole body and all of its acts and deliberations; the reason given for this being that this illegal juror may have been one of the twelve who voted for the bill, and that without him there might not have been twelve jurors in favor of finding the bill. Such was the statute of 11 Henry IV, ch. 9, passed in 1410. See comments on this statute, *Commonwealth* v. *Parker*, 2 Cush., 561. And see and distinguish cases turning upon this point. *Portis* v. *The State*, 23 Mass. (1 Cush.), 578 ; *McQuillan* v. *The State*, 8 Sm & M., 587 ; Id., 599, 609 ; *Leathers* v. *The State*, 26 Miss., 73 ; *The State* v. *Duncan*, 7 Serg., 271, 1834; *State* v. *Brooks*, 9 Ala., 10 ; *State* v. *Jacob*, 6 Tex., 99 ; 12 Id., 252 ; *State* v. *Davis*, 2 Ired., 153; Whart. Cr. Law (2d ed.), 172 ; *Com.* v. *Benton*, 4 Leigh, 645, 1832; *Jetton* v. *State*, 1 Meigs, 192; *Doyle* v. *The State*, 17 Ohio, 222; which holds a different view from the cases above cited, was upon the above distinction rightly decided, not because there were only fourteen jurors, but because one of the fifteen was disqualified from want of residence.

It would be different if more than three such challenges by the same defendant are sustained; because twelve jurors· are essential to the transaction of any business. Without twelve, there is no grand jury.

On another ground, the objection made is not available to the defendant. Objections to the regularity of the organ-4. —— ization of the grand jury must, on general princi-time of objection. ples, be taken before a plea of not guilty, and, *a fortiori*, before conviction. (*State* v. *Davis*, 2 Ired., 153, 160, 161; and see authorities collected in note to 2 Lead. Cr. Cas., 323.)

Our statute has extended this salutary principle still further in cases where defendants have been held to answer before indictment. The defendant in the case at bar was thus held. He did not, at the time of forming the grand jury, object to the mode of organization or the impanneling of the same. He reserved the objection until after the indictment was found. And it is expressly provided that a defendant thus held to answer (Rev., § 4693), " is not allowed to file a motion to set aside the indictment on the ground (§ 4691, clause 5) that the grand jury were not selected, drawn, summoned, *impanneled* or sworn as prescribed by law." With us, and as used in this connection, 5. —— im- the word *impanneled* means the final formation panneled. by the court, of the jury. It is the act that precedes the swearing of the jury, and which ascertains who are to be sworn. The irregularity or error complained of by the defendant relates to the *impanneling* of the jury, and he having been held to answer, and not objecting at the time, "is not allowed" by the statute to assail the indictment on this ground. So by section 4619 it is provided that a defendant "held to answer" "cannot object to the *grand jury* or to an individual juror for any cause of challenge after they are sworn." If the defend. ant's view is right, he should have challenged the array at

the time. Such objections, going mostly to the mode in which the accusation was made, are not favored by the courts; and statutes limiting the time for making such objections, should be construed with reasonable fairness.

That the present defendant is barred from taking the objection to the grand jury (he having been held to answer), is conceded in the *Norris House case.* (Vide, on this point, observations per KINNEY, J., 3 G. Greene, 517, 518.)

II. *Change of venue.* — The indictment was found and the plea of not guilty filed at the June Term, 1862. At the October Term, 1863, the defendant prayed for a change of venue on the ground of prejudice and excitement in the county, making the application in due form, accompanied with the affidavits of three other persons. The State filed the counter affidavits of six persons, negativing and denying the alleged excitement and prejudice. The Hon. William McClintock, attorney for defendant, on oath stated, in substance, that from time to time he had made application to fifteen or twenty persons to sign an affidavit for a change of venue, who objected solely on the ground that it would injure them in their business if they should do so, and that he verily believed that more or less of the jury would go into the box with the belief, though unconscious of it, that the defendant was guilty.

6. CHANGE OF VENUE: presumption.

In determining these applications, the court is "to exercise a sound discretion," deciding the matter "according to the very right of it." (Rev., § 4733.) This court must not forget that the court below has better opportunities than we have for forming a correct judgment. Six counter affidavits were filed. It would be very natural for persons to give the defendant's attorney the excuse he states for declining to accede to his wish to sign an affidavit. The attorney doubtless believed that the jurors would go into

the box with the impression that the defendant was guilty; but the court below was doubtless of the opinion that this belief, though honestly entertained, was, nevertheless, without foundation. We would have been equally well satisfied if, under the circumstances, the court had changed the venue; but as we cannot say that the discretion was abused, especially, considering the delay, as we cannot say that it was *not* decided according to "the very right" of the matter, we cannot reverse the judgment for this cause.

III. *Absence of attorney as ground for continuance.* — At a late day of the same term, the defendant applied for a continuance on account of the absence of Wm. Mills, Esq., one of his attorneys, residing at Dubuque, and who, it was claimed, was detained from attending court by reason of sickness. If, upon the showing made, the court had refused to postpone the trial to a later day in the term, so as to enable the defendant to employ an attorney in place of Mr. Mills, we should have been inclined to interfere. The witnesses were few — the law well settled, and two days would enable any intelligent attorney to prepare the case for trial. Besides, the defendant had present his attorney before named, who was and had been familiar with the case from the beginning. We are not satisfied that the court erred in refusing again to continue the cause to another term.

7. CONTINU-ANCE: absence of attorney.

IV. *Refusal to attach excused petit jurors.* —When the cause was called for trial, which was on the eighth day of the term, at the defendant's request the entire panel of the petit jury, consisting of twenty-four, was called. Eleven were absent, for whom the defendant asked an attachment, which was ordered against all the absentees except four. These four had been excused from attendance earlier in the term, either by reason of sickness of themselves or their families, without any other showing than a bare verbal statement not sworn

8. JURY: discretion, exercise of.

to, and without the defendant's knowledge or consent. These four thus excused the court refused to attach, and this refusal is now assigned as error. This objection must rest upon an alleged invasion of the right of jury trial. It is not tenable (Rev., § 2722). Twenty unexcused jurors remained. In matters of practice, tribunals of the extensive jurisdiction and exalted character of the district courts must have a reasonable and, unless abused, an uncontrolled discretion. The law has provided a regular jury, impartially selected from the county at large. Our experience has taught us that the profession and suitors prefer to try their causes to a regular jury. It has tended, also, to produce the belief that courts are sometimes too lax in not insisting upon the attendance of the regular panel. The pay of jurors is so inadequate as rarely to compensate business men and others of the requisite intelligence for their time. They will naturally seek to be excused, and will get off if possible. It is the court's duty to see that they are made to discharge their duty to the community, though it be unremunerative and onerous, unless their excuse is a valid one. Talesmen are too apt to consist of those who haunt the court room for the express purpose of being called by a complaisant or importuned sheriff to fill up the skeleton panel. Their average intelligence is less than that of the regular jury. Than the regular juror, the talesman is more apt to have his favorite among the attorneys, and is more accessible to influences of an improper character. The evil in some of the states is so great that it has been found necessary to aim a statute at "professional jurors." *Bissell* v. *Ryan*, 23 Ill., 566.

It cannot be denied that the trial by jury, the boast of the English and American law, is falling into some disrepute, not only among the profession, but the people. How frequent the remark: "If I have a good case, I will submit it to the court; if a doubtful or bad one, to the jury."

And this disrepute will continue, and even increase, unless the average intelligence, morality and character of the jury are, at least, equal to that of the community. Jurors should consist only of the most intelligent and substantial citizens, and should comprise the best practical talent in the community. We see nothing in this record to show that the district judge failed to keep these considerations in mind. He only excused four, and that on account of sickness. In a matter of this kind we cannot say that he must necessarily have the fact entitling to an excuse established by an oath. The defendant and his attorney, though they had reason to expect that the trial would occur during the term, did not, at the time, object to these jurors being excused, but reserved the objection until a late day in the term, and until, in fact, the cause was called for trial, and did not then offer to show, nor did they even suggest, that the jurors or their families were not sick.

Each case, like the present, must be decided upon its own circumstances. A juror's sickness or that of his family is, by statute, a good ground for being excused from jury service. (Rev., § 2722.) Whenever the action of the courts below shall be such as to violate the essential nature and security of the trial by jury, or to deprive a party of substantial rights, this court will, doubtless, furnish a corrective. The present is far from being such a case. See generally on this subject, under special statutes, *Parsons* v. *The State*, 22 Ala., 50; *Boles* v. *The State*, 24 Miss. (2 Cush.), 445.

V. *Order of peremptory challenges.* — It is also assigned 9. PRAC-TICE: exceptions. as error that " the State, after having passed the jury, was permitted to interpose challenge to the trial jury, both for cause and *peremptorily*, as vacancies in the jury box were filled."

This the record shows was the course pursued. Whether this was proper, particularly with respect to the peremptory challenges, would depend upon the construction of §§ 4780 to 4782, both included, of the Revision. It is sufficient, for the purposes of this case, to say that the record discloses no *exception* by the defendant to the course which was taken, in this respect, by the court below.

The mode of challenging is now made plain by the act of 1864. (Laws, 1864, p. 8.)

VI. *Hypothetical opinion, founded on rumor, does not disqualify petit juror.* — Another error assigned is the refusal of the court to sustain certain challenges by the defendant to jurors for cause.

10. JURY: opinion.

One Davis, called as juror, stated " that he had repeatedly heard the matters of the case talked over, and had said and thought that if the reports were true the defendant was guilty of the charge." Deford and Hoyt, also called as jurors, stated in substance the same. One Blackman, likewise called as juror, stated "that if the reports I have heard are true, the defendant is guilty. Unless my opinions are substantiated by testimony, they would not modify my verdict." Each of the above jurors stated that they had neither *formed* nor *expressed* an unqualified opinion as to the guilt or innocence of the defendant.

The defendant challenged each of these jurors for cause. The challenges being overruled, the defendant excepted. The action of the court below was entirely correct. *State* v. *Sater*, 8 Iowa, 420 ; *Wau-kon-chaw-neek-kaw* v. *United States*, Morris' Rep., 332 (correctly decided); and see also, *State* v. *Hinkle*, 6 Iowa, 380 ; *State* v. *Thompson*, 9 Id., 188. The case of *Trimble* v. *The State*, 2 G. Greene, 404, can only be supported upon the theory that the juror, Dawson, had *formed* or expressed a positive opinion as to the guilt or innocence of the prisoner, and that his subsequent explanation did not show (as to which *quere*), that

such an opinion had not been formed or expressed. See also *People* v. *Stout*, 4 Park. Cr. Rep., 71; Id., 32; Id., 535; *State* v. *Bunger*, 14 La. Ann. Rep., 461; *State* v. *Davis*, 29 Mo. (8 Jones), 391; *Monroe* v. *The State*, 23 Texas, 210.

VII. *Form of oath to jury in criminal cases.* — The record or journal entry recites that "the jury were duly impanneled, and sworn well and truly to try the cause (naming it), and a true verdict give therein according to the evidence and the best of their ability."

11. — oath.

No form of oath to jury is prescribed by the statute in the trial of indictments. In the absence of a record showing the contrary, we will presume that the oath administered was in due form. *Russel* v. *The State*, 10 Texas, 288.

It is doubtful whether the clerk in the record entry intended to set out the oath in *hœc verba*. But assuming that the above is literally the oath administered to the jury, it is sufficient. Why not? In point, see *Wrocklege* v. *The State*, 1 Iowa, 167.

VIII. *Service of notice under section 4786, and mode of proving service.* — On the trial, the defendant objected to the introduction of the evidence of C. B. Lake, M. D. Dr. Lake's name was not indorsed on the indictment.

12. CRIMINAL LAW; service of notice.

It was shown to the court that the district attorney had in due form addressed a notice in writing to the defendant, notifying him that the plaintiff would introduce Dr. C. B. Lake as a witness, stating his residence, occupation and the facts to which the witness would testify. This notice had indorsed on it two returns of service. One of these was signed and sworn to by Charles Sawyer, as an *individual*, and stated that the notice was served by him on the defendant in Dubuque, Iowa (in the jail of which place the defendant was confined), Oct. 9, 1863, by reading and delivering him a copy.

The other return stated the same facts, and was signed by Charles Sawyer, as *sheriff of Fayette county.*

The ground of objection is not that there was no notice as required by section 4786 of the Revision, but that it was not properly served upon the defendant, or, if properly served, there was no sufficient evidence of it.

This section (4786) requires the district attorney, in such a case, "to give the defendant a notice in writing, stating," &c. It does not prescribe mode of service. It is sufficient that it is served on the defendant personally. This was done in the present case. Nor does the statute prescribe the mode of authenticating the service. The service in question being authenticated by the affidavit of the person who made it, this was sufficient, even if the court would not notice the *official* return of the sheriff as to an act performed by him beyond the limits of his county.

More or less bearing upon these points, see Revision, §§ 2814–2819, 4030, *et seq.,* 4647, 4786. *Hollingsworth, Ex'r,* v. *Snyder,* 2 Iowa, 435, cited by the defendant's counsel, does not conflict with the above ruling.

IX. *Variance in name of witness indorsed on indictment.*— Among the names of the State's witnesses indorsed upon the back of the indictment, was the following: "Lovinia *Umpstead.*" The State introduced a witness whose name was "Lovinia *Olmstead.*" The defendant objected, because the witness' name was not indorsed on the bill or notice given as required by statute; and the objection being overruled, he excepted, and assigns the ruling as error.

13. —— variance in names.

The defendant does not offer to show or pretend that he had been misled in fact. He and his attorney doubtless knew who was intended. The sound of the names is substantially the same. There was no suggestion that there were "*Ulmsteads*" in the neighborhood, so as to render it probable that the defendant or his attorney might have

been deceived. In affirming the ruling of the court below in this particular, we but follow the spirit of the previous adjudications of this court. *Houston* v. *The State*, 4 G. Greene, 437; *The State* v. *Groome*, 10 Iowa, 308; *The State* v. *Pierce*, 8 Id., 231; *The State* v. *McComb*, 18 Id.

X. *What threats will invalidate confession.* —Mrs. Lovina Olmstead and Amariah Curtis testify that, on the morning of the day after the murder, the defendant said to Mrs. Olmstead (who had previously accused him of killing his wife, but to which he made no reply at the time), that, "if it had not been for his brother Andrew (of whom there was testimony tending to show the defendant to have been jealous), this would not have happened." This testimony was objected to by defendant's counsel, because the "admissions were made under threats and promises." We fail to discover evidence of any *promise* which could have led to, or have been instrumental in evoking, this confession, if it may be so called.

The *threats*, of which this statement is claimed to have been the result, were made the evening previous, and soon after the murder and arrest. At that time there were from five to eight persons, including the justice and constable, gathered together at the house of the justice. The witness Dieppe thus testifies as to the threats relied upon to invalidate the above confession or statement: "There was some talk about using violent means; I was in favor of the law taking its course, and told defendant I would do all I could to see that he should not suffer violence; * * * Marcus Pitts was the only one who said anything about threats; he said, if Ostrander got his just deserts, he would never see the moon go down; he said he left home on purpose to help hang defendant; Esq. Sawyer (the justice), High Howe (the constable), Henry Stewart and myself told Pitts that such talk would not be allowed, and then heard no more of it," &c.

The officers of the law, it thus seems, promptly and properly repressed and rebuked, in the defendant's presence, the "vigilance" demonstrations of Pitts, the only person who spoke of resorting to violence. Pitts is not shown to have been present when the confession or statement to Mrs. Olmstead was made. We are satisfied that the admission or statement to Mrs. Olmstead had no connection, direct or remote, with the language of Pitts on the previous evening. The ruling of the District Court was, therefore, correct.

XI. *Minutes of testimony before grand jury, when evidence.* — On the trial, the defendant offered to read to the jury the *minutes of the testimony* taken before the grand jury, "for the purpose of showing that the witnesses had made different and contradictory statements from those made before the court on the trial; and for the purpose of making the said minutes evidence; and for the purpose of showing that the defendant was under the influence of threats and promises when making certain alleged statements and confessions."

15. — evidence: minutes of testimony.

For the same purposes, the defendant offered to read in evidence the notice served by the district attorney (under Rev., § 4786), upon the defendant, of the introduction of the testimony of Sarah Sawyer, to prove the facts stated in the notice. The court excluded both of these items of evidence. The right to read in evidence the notice is destitute even of plausibility. There is more color for claiming, under the Revision (see and compare §§ 4624, 4629, 4639, and 4647), that the minutes of the testimony taken before the grand jury might be used as evidence for some purposes and in some events. In the case at bar, the minutes were offered by the defendant as independent evidence in his own favor. For this purpose they were incompetent. This testimony is taken *ex parte*. It cannot be used by the State against the defendant. "Minutes" only of the testimony are required to be taken. It would be unjust towards

a witness to hold that these minutes could be used to con-
tradict him, without giving the witness an opportunity to
deny their correctness before the trial jury, or to state to them
what he did testify to before the grand jury.

Where it is claimed by the defendant that there is a con-
flict between the testimony of the same witness before the
grand jury and before the traverse jury, his attention must
be drawn to his former testimony, and the foundation for
his impeachment laid in the usual and regular manner.
Same principle, *vide Morrison* v. *Turner,* 11 Iowa, 538;
*Samuels* v. *Griffith,* 13 Iowa, 103; *Stephens* v. *The People,*
19 N. Y., 570.

XII. *State not confined to testimony before grand jury.*—It
is urged that the court erred in not excluding the testi-
mony of the witness Curtis on points on which
he was not examined before the grand jury. That
this was not an erroneous, but a correct ruling, see *State* v.
*Bowers,* 17 Iowa, 46.

The writer of this opinion was necessarily absent when
that opinion was announced; but he concurs in the major-
ity view there taken. The chief justice concurs in the
above ruling in this case, distinguishing it from the *Bowers
case* above cited, because there is here no showing, as there
was in that case, that the additional testimony was "mate-
rial" to the conviction.

XIII. *Criminal intent presumed from use of a deadly
weapon.*—Another assignment of error relates to the instruc-
tions of the court to the jury. The court gave
thirty-seven instructions, only three of which
(Nos. 13, 24, 35) are complained of by the defendant.

"No. 13. An ax is a deadly weapon; and, from the use
of a deadly weapon, the law presumes a criminal intent."

That an ax is a deadly weapon, cannot be denied. (*Dol-
larhide* v. *United States,* Morris, 232.) The other language
must be taken with reference to the case in which it was

employed; and, thus regarded, it means to assert the proposition that the law will presume that a person who uses an ax as a weapon of attack upon another is animated by a criminal intent. On examination, we find that the instruction is not outside the testimony. It is not a fair construction of the instruction to say that it asserts that the defendant did use such a weapon. Such a construction is negatived by other instructions. The true view is, that it affirms a proposition of *law*—not one of *fact;* and the legal proposition is a correct one.

XIV. *Instruction No. 24 is this:*—"As many of the genuine facts of the case should be presented as may be possible; and the withholding any of them by the prosecution will warrant you in presuming that such evidence would be favorable to the defendant; [but the failure to call all the witnesses named on the back of the indictment is not such withholding of testimony.]"

18. —— suppression of evidence.

The correctness of the former part of this instruction is not before us. The defendant does not complain of it. His complaint is limited to the latter part, included in brackets. The district attorney, under our code of criminal procedure, is bound to indorse the names of all the witnesses sworn before the grand jury, and is confined to these, unless he gives notice of others. For fear of death or absence of some of the witnesses, a prudent district attorney will often duplicate before the grand jury his evidence of material facts. If this evidence is in the defendant's favor, he can subpœna the witnesses for himself. Under these circumstances, the failure to call all of the witnesses named on the back of the indictment is not such a withholding of testimony as to warrant the trial jury in presuming that such evidence would be *favorable to the defendant.* How favorable? To what extent favorable? There is a want of definiteness. The principle asserted in the main portion of the instruction is a dangerous one, and, if correct,

it must be asserted with precision and applied with great care. (See, as to the effect of non-production of evidence, 5 Cush., 316, per SHAW, Ch. J., in *Webster's case*.) It is clear that there is no error in the modification which the defendant makes the ground of his objection.

XV. *Degree of proof required in criminal cases.* — The remaining instruction is as follows: " No. 35. The evidence must satisfy the jury, beyond a reasonable doubt, of the guilt of the prisoner. The doubt, however, must be actual, substantial, rational and conscientious, and not mere speculation. Everything relating to human affairs, and depending upon human testimony, is open to some possible or imaginary doubt. If the whole evidence, taken together, produces such a conviction on the minds of the jury, of the guilt of the prisoner, as they would act upon in a matter of the highest importance to themselves in a like cause, it is their duty to convict."

To the first sentence the defendant makes no objection. The second sentence is clearly correct, is in accordance with the uniform tenor of the authorities, and is neatly and perspicuously expressed. The third sentence is almost literally extracted from the opinion of Chief Justice SHAW in *Dr. Webster's case*, 5 Cush., 320. The fourth sentence substantially adopts the definition or description of the reasonable certainty necessary to convict, given by Chief Baron POLLOCK in *Rex* v. *Manning and wife*, cited in Wills on Cr. Ev., 210 ; 3 Greenl. Ev., § 29 and note.

And the idea therein conveyed is approved, and almost the same language as in the instruction of the court, is used to express that idea, by Mr. Starkie, in his Treatise on Ev. (vol. 1, p. 578, 7th Am. ed., in prior editions, p. 514), and is also approved by this court in the *State* v. *Nash and Redout*, 7 Iowa, 347, 385.

Reasonable certainty or reasonable doubt is not a little difficult to prescribe. We never thought the description or

The State of Iowa v. Ostrander.

illustration of it, which is immediately under consideration, particularly happy or of essential value as a guide to a jury. But it is not erroneous.

In regard to the quantity or degree of proof required in criminal cases to convict, the teachings of the law may, perhaps, be thus briefly expressed : Full and satisfactory proof is required. No mere weight of evidence is sufficient unless it excludes all *reasonable*, not unreasonable, doubts as to the guilt of the prisoner. The proof of guilt must be inconsistent with any other rational supposition. The doubt that entitles to an acquittal must be *real*, not *captious* or *imaginary*. It must not be a forced or artificial doubt, manufactured, so to speak, by the sympathy of the jury. But it must be a doubt, which, without being sought after, fairly and naturally arises in the mind after comparing the whole evidence and deliberately considering the whole case. If upon such comparison and consideration the minds and consciences of the jurors are not abidingly and firmly satisfied of the defendant's guilt — if moral certainty is not produced — if the judgment wavers and oscillates — the charities of the law and the presumption of innocence concur in requiring the jury to give the accused the benefit of the doubt thus arising and to acquit him. But this charity and this presumption ought not to be perverted, as they not unfrequently are, to justify the acquittal of those of whose guilt no *reasonable* doubt exists. The proof is sufficient if it establishes guilt to a moral certainty — such a certainty as firmly and fully convinces the understanding of jurors. As illustrating the doctrine of reasonable doubt, and as showing that the instruction complained of is not erroneous, see, also, the following: *Pate* v. *People*, 3 Gilm. (Ill.), 661; *Browning* v. *State*, 30 Miss. (1 George), 656; *Gardiner* v. *State*, 14 Mo., 9; *McGuire* v. *The State*, 37 Miss., 369; *State* v. *Johnson*, 3 Jones' Law, N. Car., 266; *Corley* v. *State*, 28 Ala., 22; Best (Principles of Ev.), § 95

(2 Lon. ed.); see *State* v. *Oscar*, 7 Jones' Law, N. Car., 305.

XVI. The only other error assigned is, that the verdict is not sustained by the evidence.

It is our opinion that the conclusion of the jury is fully warranted by the testimony. This opinion is already so long (for the statute makes it our duty to notice every point) that we cannot set out the substance of the evidence. It leaves no doubt upon our mind, as to the defendant's guilt. We are not surprised that the jury found him guilty. But we do find it somewhat difficult to see in the evidence how they could reduce the offense to the *second* degree; the solution of this is referable, doubtless, to the disinclination of juries to find a verdict which will result in punishing the offender capitally.

Believing that justice has been done, and that too without the violation of legal principles, it only remains to add that the judgment appealed from must be

Affirmed.