Gaston, J.
 

 We are of opinion that the appellant has not shewn any error in the instructions to the Jury, nor sufficient reasons to arrest the judgment.
 

 The indictment is founded on the act of 1822, chap. 1155, re-enacted in the Revised Statutes, chap. 34, sect. 55, whereby it is declared, “ that if any person shall knowingly alter or deface the mark or brand of any person’s neat cattle, sheep or hog, or shall knowingly mismark or brand any unbranded or unmarked neat cattle, sheep or hog, not properly his own, with intent to defraud any other person, he shall, on conviction in a Court of Record, be liable to corporal punishment in the same manner as on a conviction of petit larceny.” The manifest purpose of the Legislature is to punish the act of changing or defacing these marks or brands, which are the ordinary indications of ownership in property of this description, and also the act of putting false marks or brands thereon, with intent to injure the owner by either depriving him of the property or rendering his title thereto more difficult of proof. Now, when the act of wilfully changing or defacing the mark is fixed upon the person accused, and no explanation is given of the act to render it consistent with an honest purpose, the conclusion follows irresistibly that it was done with intent to effect the injury which is the ordinary and necessary consequence of the act.
 
 *156
 
 Such intention is directed against the owner, whoever he may be, and the charge that the act was done with intent-to injure any individual named is made out, when it is shewn that
 
 he
 
 was the owner at the time when the act was committed.
 

 It has been contended by the counsel for the appellant that the offence created by the statute and charged in the indictment could not have been committed, because, at the time, when the act was done, the animal had strayed from the possession of the owner, and the statute, by declaring that the offender shall be liable to corporal punishment in the same manner as on a conviction of petit larceny, must be understood as applying to those cases only wherein the offender, by a felonious appropriation of the animal, would have committed the crime of petit larceny. -He further urges that this construction of the statute is strengthened by the circumstance, that a special provision is made by the statute for improper interference with strays in c. 112, s. 8. We do not concur in this construction of the statute. In the description of the offence thereby created, no reference is made to the crime of larceny. The offence consists in knowingly altering or defacing the mark of, or in knowingly mismarking an animal, the property of another with intent to defraud. The mere straying of the animal from the owner’s premises makes no change of property. The animal still remains his, and the wrongful act is not less calculated, but in fact more likely, to do him an injury, than it would be if done to an animal in his immediate possession. The reference in the statute to’the punishment in cases of petit larceny does not affect the description of the offence, more than it would have affected that description, if the reference had been to the punishment in cases of perjury or forgery or of any other crime. It only denounces against the offence previously described, the same penalty by which, the existing law is inflicted upon a conviction of petit larceny. The construction contended for is not only unwarranted by the language of the statute, but would render the statute itself inoperative in the cases, which mainly rendered it necessary. Nor does the section referred to in c. 112 provide for an offence of this
 
 *157
 
 description in cases of strays. The object of the Legislature in that chapter is to point out a mode of proceeding in those cases, whereby the owner may be enabled to regain the possession of his property or to get the value thereof, and a proper compensation may be made to those, who shall render him their assistance for this purpose; and, in furtherance of this object, the 8th section imposes a pecuniary mulct on those, who may take up or use the stray, otherwise than in the mode therein directed.
 

 The motion in arrest of judgment rests on two grounds.
 

 The first is for that the offence is not described in the language of the statute., This objection applies only to the first count of the indictment, and as to that is well taken. The first count charges that the accused did alter the
 
 make
 
 of the sheep. No doubt the work “ make” was intended to be written 1! mark,” but it is a different word, having a different signification and cannot be brought within the exception of
 
 idem sonans.
 
 But this mistake is not in the second count, which charges that he defaced the mark of the sheep; and a general verdict of guilty having been rendered, judgment will not be arrested, if either count be sufficient to warrant it.
 

 The other ground taken for this motion is lor that it appears upon the record, that the Grand Jury, who found the indictment, was constituted of fifteen Jurors only. The argument in support of this objection is, that by the express words of the Revised Statutes c. 31, s. 34, the Grand Jury must consist of eighteen Jurors—that under the constitution of this State, no freeman can be put to answer any criminal charge but by indictment, presentment or impeachment, that an indictment is a written -accusation found by a Grand Jury; and that the accusation, which has been received as an indictment in this case, is not an indictment because not foun'd by a Grand Jury legally constituted. We do not deem it necessary to enter into an examination of every part of this argument, because we differ from the counsel for the appellant in the construction, which he attaches to the statute on which he relies. It was an established principle
 
 ot
 
 the common law that no man could be convicted, at the suit of the
 
 *158
 
 King, of a Capital offence, unless by the voice of twenty-four of his.equals and neighbors, that is by twelve at least of the Grand Jury in the first place assenting to the accusation, and afterwai'ds by the whole Petit Jury of twelve more finding him guilty upon his trial. 4 Bl. Com. 306. To find a bill it was required that twelve at least of the Grand Jury should agree thereto; but if twelve did so agree, it was a good presentment though the rest did not agree. 2 Hall’s P. C. 161. It was necessary that the Grand Jury should consist of twelve at least, and it might contain any greater number not exceeding twenty three. There must be twelve at least because the concurrence of that number was absolutely necessary in order to put the defendant on his trial; and there ought not to be more than twenty three, because otherwise there might be an equal division, or two full Juries might differ in opinion.
 
 Clyncard’s case,
 
 Cro. Eliz. 654.
 
 King
 
 v
 
 Inhabitants of Southampton,
 
 2 Black Rep. 718. 2 Burr 1088. I Chit. Crim. Law 70.5. These great principles of the common law were brought over to this country by our ancestors, and, with an extension of their application to other offences, were by the Constitution made a part of our fundamental law, and cannot be violated either by the Judiciary or the Legislature. According to them, therefore, a bill found by twelve of a Grand Jury composed of any number between twelve and twenty four, (exclusively,) is sufficient to put any man on trial for a criminal offence. We do not doubt but that it is competent for the Legislature to declare that although a bill be found by twelve of a Grand Jury the accused shall not be put upon his trial, and that the bill so found shall not be deemed an indictment, unless the Grand Jury consisted of eighteen Jurors. Such an act of legislation would not infringe any of the rights or liberties secured by the Constitution, but would be a regulation for the enjoyment of them under the Constitution. The question is, has the Legislature made such a declaration or any enactment tantamount to such a declaration?
 

 The words of the section referred to are : “ The Judges of the Superior Courts .and the Justices of the County Courts shall direct the names of all the persons returned to serve as
 
 *159
 
 Jurors at the terms of their respective Courts, to be written on scrolls of paper, which shall be put in a box or hat and drawn out by a child under ten years of age, and the first eighteen drawn shall be a Grand Jury for said County, and the residue of the names in the box or hat shall be the names of those who are to serve as Petit Jurors for said Court.” These words, it is obvious, are directory to the Judges and Justices of the Courts in regard to the manner in which the Grand and Petit Juries shall be formed, out of the persons returned generally as Jurors on the original
 
 venire.
 
 First, a sufficient number, eighteen, shall be drawn by lot out of the whole number returned, for the Grand Jury, and those not so drawn shall serve as Petit Jurors.
 

 It does not in terms declare that a Grand Jury constituted of less than eighteen shall be insufficient to find a Bill. It does not purport, otherwise than necessarily results from the directions so given, to add to, or in any way modify the operation of the ancient rule in regard to the necessary number of a Grand Jury. And it cannot be believed that if any addition to or modification of the exercise of this so important rule were intended, but that it would have been distinctly and unequivocally announced. It simply gives the directions, but is silent as to the effect which may result from inattention to a non-observance of them in any particular.
 

 It cannot be pretended that the rule is not yet in full force that a bill may be found on the presentment of twelve only .of a Grand Jury. Now it would seem a singular anomaly that the concurrence of tvvelve out of eighteen is sufficient to prefer an accusation, but that twelve out of fifteen is undeserving of notice.
 

 There are other directions in this Statute, in relation to the constitution of Grand Juries, quite as explicit as those contained in the 74th section. Among these is to be found the express direction in the 27th section, that the original
 
 venire,
 
 out of which the Grand Jurors shall be elected, shall consist of not more than thirty-six nor less than thirty persons. What would be the effect of a disregard of this direction ? Would a Grand Jury elected out of a
 
 venire
 
 containing a greater or less number than is herein directed be so incompe.
 

 
 *160
 
 tent to find an accusation that a bill by them presented must be regarded as a nullity? Upon this question we are not left to our own unaided reasoning, but have the safe guidance of authority. This question occurred in
 
 McEntyre's
 
 case, 2 Law Rep. 287. At that tune the provision of the law was that the origin
 
 &Vvenire
 
 should consist of thirty persons. lie was convicted of a capital offence, and it was moved in arrest, for that it appeared that the original
 
 venire,
 
 out of which was drawn the Grand Jury who had found the bill, consisted of forty Jurors. It was unanimously decided by the then Supreme Court that, although the directions of the law had been disregarded in making out the original
 
 venire,
 
 it did not follow that the indictment would not uphold the conviction —that it was competent for the party indicted, upon his arraignment, to object to the irregularity"as to the constitution of the Grand Jury — but that if he did not then object thereto, he should not afterwards be received to make this objection.
 

 The directions contained in the 34th section of the Revised Statutes were not then enacted for the first time. They are to be found, so tar as respects the constitution of Juries, in the
 
 Superior
 
 Courts, in the 11th section of the Act of 1779, c. 157, and have ever since, so far at least been in full force. No direct determination has been made on the precise point before us. An intimation of opinion is found in
 
 Nixon Currie's
 
 case, that a bill is sufficiently formed to support a conviction and warrant a judgment, if the Grand Jury consisted of twelve Jurors. In that case, which has not been reported, but .which was determined in
 
 1824, an
 
 objection was taken to the transcript of the record sent up to this Court, as insufficient, because it did not show by whom the bill of indictment had been'found, and thereupon a
 
 ceUiorari
 
 was awarded, to bring up a full record. In delivering the opinion of the Court, Judge Hall observed: “ It is not sufficient that a Petit Jury should find him guilty, but it is indispensable that the Grand Jury should find the bill of indictment against him. Suppose when the record is looked into it appears that a less number of persons
 
 than twelve
 
 composed the Grand Jury,
 
 that
 
 might probably be alleged as a good reason why judgment should not be pronounced.” In
 
 Seaborn's
 
 case, 4 Dev.
 
 *161
 
 307, it was remarked by one of the members of this Court, (Ch. Jus. Ruffin,) “ tVe require the record to show that the inquisition was taken by a Grand Jury,
 
 perhaps
 
 that it was a Grand Jury of eighteen but it is manifest that this suggestion was made out of abundant caution, and we know that it was thrown out in deference to a doubt thereupon, which was supposed to have been expressed by a late highly respected Judge. Both of the members of, the Court, who delivered opinions in
 
 Seaborn's
 
 case, expressed their approbation of the decision in
 
 McEntyre's
 
 case, and both held that the statutory enactments with respect to the organization of Grand Juries are directory merely, and that there is nothing in the Statute which declares or imports that the proceedings shall be null if these directions be not observed.
 

 It is our unanimous Opinion that the accused may, before pleading to the felony, object to any irregularity in the constitution of the Grand Jury, if he deem such irregularity injurious to him; but that, after pleading to the felony, he cannot object to the indictment as not found, if it appear to have been found by a Grand Jury constituted of twelve' or any greater number of Jurors, not exceeding twetity-three, as is required at. the Common Law.
 

 This opinion is to be certified to the Superior Court of Macon, with directions to proceed to judgment and sentence against the appellant, agreeably thereto and the laws of the State.
 

 Pee, Curiam.- Ordered accordingly.-