## THE STATE OF ALABAMA V. MILLER.

1. A grand jury legally constituted of thirteen members, is competent to act, although it may subsequently be reduced, by the absence of one juror, to twelve: and this is also the case, notwithstanding the Court, by statute, has the authority to re-constitute the grand jury, on account of the absence or inability to serve, of all or any of the grand jurors.

Question reserved by the Circuit Court of Mobile County.

THE defendant was indicted at the February term, 1841, for keeping and exhibiting a faro-bank. He pleaded, in abatement of the indictment, that it was found by a grand jury not legally constituted ; verdict and judgment in favor of the State.

At the trial, the defendant proved that the indictment was found by a grand jury impannelled at the Fall term, 1840, then consisting of thirteen members, and that only twelve of them appeared and acted as the grand jury, at a special term, in February, 1841, when the bill was found.   On this evidence, the defendant requested the Court to charge the jury, that twelve men could not form a grand jury; and if but twelve men were present at the time of finding, the indictment was bad, and the issues should be found for the defendant.   This, the Court refused, and charged the jury, that if the grand jury at the Fall term, 1840, consisted of thirteen members; of which, but twelve

appeared and acted as a grand jury at the special term, and as such, found the bill; it was a good bill of indictment.

The question, however, was reserved as novel and difficult, for the decision of the Supreme Court.

J. GAYLE, Jr. for the defendant,—cited Aikin's Digest, 296, § 6; Meek's Sup. 77, § 3; and insisted, that the statute having directed, that not less than thirteen members should be sworn, was decisive to show that less than that number were incompetent to act.

THE ATTORNEY GENERAL, contra—cited, Croke's Eliz. 654; 4 Greenl. 439; 2 Hale, 161; 1 Chitty, C. L. 251.

GOLDTHWAITE, J.—The general statute under which our grand juries are organized, directs that from the whole number of jurors attending, there shall be drawn, not less than thirteen, nor more than eighteen, who shall constitute the grand jury for the term of the Court, to which they are summoned: Aik. Dig. 296, § 6.

In our opinion, this does not change the common law, except so far as it invests the Court with a discretion, within the limits specified, as to the number to be sworn. Here, it appears that a grand jury was legally constituted, according to the terms of the statute, and the question presented, is nothing but this—whether the grand jury is dissolved or incompetent to act, whenever from any cause, its members are reduced below thirteen in number?

At the common law, although a grand jury might consist of twenty-three jurors, the concurrence of only twelve, was essential to the finding of a bill; and we find nothing in the books to authorise the belief, that the deliberation of a greater number, is to be considered as essential. The reason why grand juries, at the common law, were constituted with a greater number than twelve, most probably, was to prevent the failure of criminal justice, that might otherwise have occurred by the dissolution of the grand jury, in consequence of the death or absence of one juror. If such a provision had ever been considered as essential to the liberty of the subject, we doubtless should have found it so stated; on the contrary, the variation of number, which was permitted, is persuasive, to show that

the excess above twelve, was introduced only, to guard against the difficulties which were obvious, if only that number was empannelled.

The act, organizing the Courts of the 10th circuit, gives power to the Judge, (within the three first days of the special term,) to draw a grand jury, or to supply the places of any of those who constituted the jury at the previous term, and who at the special term are absent, sick or excused. Meek's Sup. 77, § 3.

But this, no more than the general law, imposes the obligation that the jury, when once legally constituted, shall be dissolved or incompetent to act, because more than twelve jurors are not present.

It seems to us, that the powers thus given, are intended to provide means, by which the jury may be preserved in an efficient state, by the appointment of new members within a limited time, and that it is not a proper conclusion, to infer, that the Legislature intended that a grand jury should be dissolved, when ever from any cause, only twelve jurors could be in attendance.

We think there is no error, and the judgment is affirmed.

COLLIER, C. J.—By a statute passed in 1811, it is provided, that not less than thirteen, nor more than eighteen, shall constitute the grand jury for each term of the Circuit Courts. Aik. Digest, 296. The object of the law, in requiring this number, doubtless is, to secure to the public and those accused of offences, the benefit of their deliberation, and not merely to insure the attendance of twelve jurors. That the concurrence of this latter number, is sufficient to authorize the finding of a *true bill,* cannot be questioned, but that the grand jury should be complete; especially in a case originating where the one before us did, I think is shown by the third section of the act for the organization of the Courts of the tenth Circuit; which section applies exclusively to the Circuit Court of Mobile. That section is as follows: "The grand jury summoned for the fall term of the Circuit Court, shall serve at the February term of the special Court; and the grand jury summoned for the Spring term of the Circuit Court shall serve at the Summer term of the Criminal Court. *Provided,* that the

22

Judge of said Court, shall have power, within the first three days of the special term, to draw a grand jury, or any number of grand jurors to supply the places of any who shall be sick, absent, or excused from service on the same; and the said Court shall have the same powers for the purpose of forwarding business, as is confided to the Circuit Court." Act of February 5, 1840.

.The terms " shall have power," as used in the *proviso,* it has been held, may be construed as either directory or imperative, according to circumstances. " Where the statute directs the doing of a thing for the sake of public justice, or the public good," *may* is construed to mean *shall.* The King as Barlow, 2 Salk. Rep. 609; Carth. Rep. 293. And in the case of a public officer, *may* is tantamount to *shall.* The King v. The inhabitants of Derby, Skinner's Rep. 370. In the Newburgh Turnpike Company v. Miller, 5 Johns. Ch. Rep. 113, Chancellor Kent held, " that whenever an act to be done under a statute, is to be done by a public officer, and concerns the public interest, or the rights of third persons, which require the performance of the act, then it becomes a duty in the officer to do it." See also, *Ex parte* Simonton, *et al.* 9 Porter's Rep. 390. In the first case cited, the terms of the act which the Court considered were, "the Church-wardens shall have power to make a rate;" these words were construed to impose a peremptory duty; and such in my opinion, must be the construction of the proviso of the special act quoted.

. Hence, I am in favor of reversing the judgment of the Circuit Court.