## STATE v. WILLIAMS.

1. MOTION TO QUASH—OBJECTIONS WAIVED.—Motion to quash is the proper mode of objecting to an indictment found by an illegal grand jury, but defendant cannot on appeal complain of the pleadings by the State to such motion, nor of a failure to have issues of fact thereunder submitted to a jury, when no such complaints were made on Circuit nor passed upon by the trial judge.
2. QUALIFICATION OF JURORS.—Under the law now of force in this State, jurors, grand and petit, are not required to be freeholders or taxpayers,

and persons liable to jury service need possess no other qualification than those prescribed for electors or members of the general assembly.

3. GRAND JURY.—It requires the concurrence of twelve grand jurors to present a bill of indictment. Therefore while eighteen is a full panel, a grand jury with only twelve present is a legal and sufficient body.

4. TRIAL BY JURY.—The requirement of the constitution that the right of trial by jury shall remain inviolate is not violated so long as the right of trial by twelve jurors is preserved.

5. QUESTIONS ON APPEAL—DIRECTING VERDICT.—Error cannot be imputed to the trial judge for not directing a verdict of acquittal, when he was not asked to so instruct the jury.

6. CHARGE—DISCONNECTED PARAGRAPH.—Error cannot be imputed to portions of a charge, where the charge as a whole does not convey the meaning which such selected paragraphs, disconnected from their context, would seem to bear.

7. EVIDENCE—PROOF OF NEGATIVE.—Under indictment for selling cotton covered by a lien without the written consent of the lienee, the State proved the lien and the sale. *Held,* that it was not necessary for the prosecution to prove further that the lienor had not the written consent of the lienee to make such sale.

Before IZLAR, J., Berkeley, October, 1890.

This was an indictment against Sharper Williams for selling cotton covered by lien without consent of the lienee. Before pleading to the indictment, the defendant presented a plea as follows :

In the Court of General Sessions on the 17th day of October, in the year of our Lord 1890.

And the defendant, Sharper Williams, says, a grand jury of and for the County of Berkeley, in the State aforesaid, at a Court of General Sessions begun and holden in and for the said county and State, on the first Monday of October, 1890, found a true bill of indictment against this defendant, and presented him on their oaths as having disposed of cotton under lien to secure the payment of a sum of money to A. J. Mullinax, and otherwise committing an offence against the statutes of this State; that Abram S. Brown, A. J. Mann, Hamilton Rodgers, C. Deveaux were members of said grand jury, and not one of them is a freeholder in this county, and Abram S. Brown has paid but six cents taxes this year, 1890, which six cents is a tax for the fiscal year 1889; that R. H. Grimshaw was drawn and summoned on said grand jury, and he is an alien, besides not being a freeholder; that there was a deficiency in said grand jury in

that Chas. H. Drayton, A. H. Lucas, and T. D. Green did not serve on said grand jury, though they had been duly drawn and summoned for that purpose, nor were any good and lawful men nor any men drawn and summoned to fill the vacancies or deficiency in said grand jury, nor was any venire issued for that purpose, and this he is ready to verify.

Wherefore he prays judgment of said bill of indictment, and that the same may be quashed.

(Signed)      SHARPER WILLIAMS,

(Signed)      CLAUDIAN B. NORTHROP,

Attorney for Sharper Williams.

[Verified].

To this plea the solicitor demurred orally, and after some argument on the issues of law involved, by leave of the court, he was permitted orally to traverse one of the facts alleged in the plea in abatement, to wit, the allegation "that R. H. Grimshaw was drawn and summoned on said grand jury, and he is an alien." No sworn testimony was introduced, and the judge decided the issues raised without the aid of a jury, none being demanded by the defendant. The demurrer was sustained and the plea in abatement overruled.

The defendant then pleaded not guilty, and was tried by a jury. The State proved the lien and the sale of the cotton, but no testimony was offered to show that the sale was without the written consent of Mullinax.

The judge charged the jury as follows:

The defendant is indicted for disposing of his cotton crop which was under lien to Mr. Mullinax, and for failing to deposit the amount of the lien with the clerk of the court of the county. Ordinarily if those facts were made out to your satisfaction, the case would be proved. But you must be satisfied that there was a lien. A lien is a contract between the party agreeing to make the advances and the party to whom the advances are made, in writing and recorded within a certain time. And that contract must be entered into before the advances are made. If the advances were made before the lien, the party would acquire no lien at all. You have heard the subscribing witness testify, and if you are satisfied that this contract was entered into before any advances were made, then Mr. Mullinax acquired a lien on the crops made by this man on that land for that year, and the de-

fendant could not dispose of that crop without the consent of Mr. Mullinax, or without paying the lien or depositing the amount of it with the clerk of the court within the ten days prescribed by law.

You have heard the testimony as to whose place this was. You have heard it said that the defendant rented this land from his father in law. If you believe that testimony, I charge you that he was a tenant of his father-in-law; that his father-in law was his landlord, and that he had a right to sublet that land, and that he would have the first lien on that crop. The law gives the landlord the prior lien on the crops raised by the tenant during the year, in preference to all other liens. The second lien is the laborer's lien, and the third lien in order of priority comes the merchant's lien for advances. That stands last. The landlord's lien need not be in writing at all. It is one of the most remarkable pieces of legislation probably ever enacted in any country, but it is the law. I charge you that if you believe the testimony on that point, this old man stood in the position of landlord to this defendant, and therefore under the law he would be first entitled to be paid his rent out of the crops raised on that place.

You have heard the testimony as to the amount that was to be paid, and you have heard the old man's testimony as to his understanding with Mr. Mullinax. That is a matter you are to consider. His testimony was that when he carried this note to Mr. Mullinax, he told him to go and sell the cotton and pay his rent, and if there was any surplus to bring it to him. And you further heard him testify that the rent and expenses of sale consumed all the crop. That is a question of fact for you to decide. In case you come to the conclusion that there was any such contract between this party and Mr. Mullinax about selling the crops and paying the rent, &c., and there was any part of those proceeds that should have gone to Mr. Mullinax that did not go to him, then this party is guilty. But if you conclude that there was no portion of the proceeds, after paying the rent and expenses, which ought to have gone to Mr. Mullinax, then the defendant would not be guilty. If it was a dollar or fifty cents or two dollars which should have gone to Mr. Mullinax, and did not go to him, it would be as much a violation of the law as if it

had been a very much larger sum. The landlord's lien is only for agricultural purposes and does not cover the houses.

. The jury brought in a verdict of guilty, and the court passed sentence on the 20th day of October, 1890, that the defendant pay a fine of $50 or be imprisoned in the State penitentiary for six months. A motion for a new trial was made on the minutes and refused, and defendant appealed on the several grounds set forth in the opinion.

*Mr. C. B. Northrop*, for appellant.

*Mr. Jervey*, solicitor, contra.

February 26, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. The appellant, Sharper Williams, was tried at the October term, 1890, of the Court of General Sessions for Berkeley County, before his honor, Judge Izlar, and a jury, upon an indictment which charged that the appellant had committed the crime of selling nine hundred pounds of seed cotton that was covered by an agricultural lien executed by him to A. J. Mullinax in 1888, to secure the payment of thirty dollars, without the consent in writing of said Mullinax, and in violation of the other provisions of the law in such cases made and provided. The defendant interposed a plea in abatement, which was overruled by the presiding judge. Having been found guilty and received sentence, he appealed to this court upon these grounds :

1. Because his honor erred in sustaining the demurrer to the defendant's plea in abatement.

2. Because his honor erred in permitting the State to amend its general demurrer to the plea in abatement after hearing argument from defendant's counsel, and so allowing the State to demur to a part of the plea, and at the same time traverse a part thereof.

3. His honor erred in not submitting to the jury the issue of alienage raised by the State's amendment to its demurrer traversing the allegation to that effect in said plea.

4. That his honor erred in deciding said issue adversely to the defendant upon no sworn testimony.

5. Because his honor erred in not quashing the indictment as prayed for in said plea, because several of the grand jurors who presented it were not freeholders in Berkeley County, and because one of them paid but 6 cents taxes.

6. Because his honor erred in not quashing the indictment as prayed for in said plea, because it was presented by a grand jury of less than eighteen, the statutory number, and because the statutory requirements providing the mode in which deficiencies in the grand jury should be filled were not complied with, that is to say, because no one was drawn or summoned, nor was any venire issued by the clerk to fill the vacancies caused by the absence of certain members of said grand jury mentioned in said plea in abatement.

7. Because his honor erred in not disallowing the State's amendments to its demurrer and quashing said indictment, as prayed for in said plea, because one of the grand jury drawn and summoned to serve was alleged to be an alien in defendant's plea.

8. Because his honor erred in refusing the motion to direct a verdict of acquittal, because the State had not offered any evidence of the allegation in the indictment that the defendant had disposed of the cotton without the written consent of the mortgagee or alienee.

9. Because his honor erred in defining to the jury the offence alleged in this indictment, and in charging them in these words: "Mr. Foreman and Gentlemen of the Jury: The defendant is indicted for disposing of his cotton crop which was under lien to Mr. Mullinax, and for failing to deposit the amount of the lien with the clerk of the court of the county. Ordinarily, if those facts were made out to your satisfaction, the case would be proved."

10. That his honor erred in charging the jury that the "landlord's lien is only for agricultural purposes, and does not cover the houses."

11. Because his honor erred in refusing the motion of defendant's counsel to set aside the verdict and order a new trial, because a material part of the crime alleged in the indictment had not been proved by any evidence, to wit, that the cotton had been

disposed of without the written consent of the mortgagee or lienee.

We will not undertake the consideration of these eleven grounds of appeal separately. The first seven thereof are intended to cause this court to review the alleged error of the Circuit Judge in refusing to sustain the prayer of the prisoner that the bill of indictment should be quashed. There can be no doubt but that the prisoner adopted the proper mode of bringing to the attention of the Circuit Court the alleged defects in the indictment; but it is necessary just here to state that when the prisoner complains to this court of an error in the Circuit Judge in the mode adopted to test the sufficiency of his plea in abatement, and we discover from the "Case" here presented that his counsel neglected to ask the court to have any issues of fact raised by his said plea tried by a jury, and also neglected to make any objection to the solicitor's demurring to a part of his plea and traversing a part thereof, we must overrule his objections, if ever there was merit in such objections, *as coming too late*, for he did not give the Circuit Judge below an opportunity to pass upon such causes of complaint, and we are not able therefore to say the Circuit Judge committed any errors of law which we ought to correct. If parties desire to *offer testimony* in support of their pleas, they should certainly attempt to do so before they complain that the Circuit Judge decided the points raised by the plea without the aid of witnesses. It is a part of counsel's duty to bring to the attention of the trial judge anything and everything that he conceives necessary or proper to the preservation of the rights of his client at any stage of the trial, and if he neglects that duty, the responsibility is his own.

In the group of exceptions now being considered, the appellant attacks the grand jury which found the bill of indictment against him because, *first*, all the members of such grand jury were not freeholders; *second*, one of such grand jury only paid a tax of six cents; *third*, such grand jury was composed of less than eighteen members, and such deficiency was not filled; and *fourth*, because one of such grand jurors was an alien. This court decided, in the case of *State* v. *Massey* (2 Hill, *379), that it was not necessary that a juror in this State should be a free-

holder. From 1799 up to 1868 it was necessary that a juror, if not a freeholder, so far as property qualification was concerned, should pay a tax of three shillings. *State* v. *Massey, supra.* From 1868, when the law prescribing the qualifications for jurors was adopted, up to the present time, property qualifications have been dispensed with. 14 Stat., 119, 691, § 1. It was then provided that all persons liable to service on juries shall possess no other qualification than those required of voters in the choice of members of the general assembly, and the act of the general assembly of this State, approved in 1870 (14 Stat., 393), fixed the qualification of a voter under article VIII., section 2, of the State Constitution, to be "a male citizen of the United States, of the age of twenty-one years and upwards, not laboring under the disabilities named in the constitution, without distinction of race or color or former condition, who shall have been a resident of the State for one year, and in the county in which he offers to vote for sixty days next preceding any general election."

It will be observed that we have only used the word juror, while the qualification of grand jurors is the point under discussion, but by an examination of the authorities bearing upon this matter, we fail to find any distinction drawn as to the qualifications to be possessed by a juror, either grand or petit. Then, also, our statute regulating their selection places them upon the same footing. Before passing from this point, we desire to express our hearty concurrence with the provisions of our laws that render every man of good character and intelligence eligible to jury service. To a certain extent it is a burden, and if so, it is a common burden, and every one of the proper character and intelligence, not excused by law, should be required to bear his share. Certainly any one who has thoughtfully considered the character of our people, has realized that neither the ownership of lands nor the possession of a certain amount of taxable personal property should of themselves entitle the owner to receive privileges or to bear burdens that cannot be shared by those of equal intelligence and uprightness, who are less fortunate in this world's goods and estate. The requirements of the law are fully met when good and true men are called to serve upon the juries of

our country, without any regard being paid to the amount of rent rolls on the one side, or of bank accounts on the other.

As to the number of the members who shall compose the grand jury, upon an examination of legal writers of approved merit, it will be discovered that it has varied. · It has been suggested by one writer that in the earliest history of the grand jury, it was found to be composed of twelve members, and he suggested that inasmuch as it was always essential that there should be an agreement of at least twelve members of the grand jury to the finding of a true bill or other presentment, the number for convenience was subsequently increased. In this State, under the act of 1731, the number drawn was 30, but of this number, 23 should serve.[1] The number required for the full panel in our law, as it is now, is eighteen. But our court of last resort has held that there need not be more than twelve present when any bill of indictment shall be found. *State* v. *Clayton and Carter*, 11 Rich., 581. It would be a solid pleasure to this court to reproduce, by extended quotations, much of the learning of the ancient and modern writers on this branch of the law, but the temptation to do so must be resisted, in view of the demands upon our time by other duties, and we do so the more readily because the question now suggested is no longer an open one.

In answer to so much of the argument as is concerned, when the appellant refers to the constitutional provisions, "that the right of trial by jury shall remain inviolate" (art. I. .section 11 of our Constitution), we can say this, too, is no longer an open question, for it has long since been decided that the requirement in question is fully met when the prisoner is vouchsafed, by the law of the land, a fair trial by twelve jurors, men good and true. *Cregier* v. *Bunton*, 2 Strob., 487; *State* v. *Boatwright*, 10 Rich., 407. Just in this connection, let us quote the language of this court delivered years ago when a provision of the constitution of our State, couched in almost the identical language of the present constitution, was under consideration in the case of *State* v. *Boatwright, supra:* "The import of the words 'trial by jury,' &c., in the article and section of the constitution referred to, was elaborately considered in

---

[1] 3 Stat., 276.

the case of *Cregier* v. *Bunton,* 2 Strob., 287, and in answer to the ground taken here, it would be fruitless to attempt to add to the able opinion of Evans, J. * * * He, as the organ of the court, concludes that the constitution intended to preserve inviolably the trial by jury as an institution—as a tribunal for the trial of issues of fact; but the framers of it did not intend to prohibit all changes in the mode of selecting the jury. The manner of drawing, the qualification, the right of challenge, the mode in which they shall be presented for challenge, &c., are preliminary to the trial, 'and do not enter essentially into the idea of a jury trial.' * * * As a tribunal to determine all issues of fact, the trial by jury is forever inviolably preserved by the paramount law; but all the steps necessary to prepare and to organize it, are regulated either by statute or rule of court." *Cregier* v. *Bunton,* 2 Strob., 287 ; *State* v. *Boatwright,* 10 Rich., 407.

So therefore we must overrule the first seven grounds of appeal.

We will now consider the remaining grounds of appeal. As to the eighth, we cannot agree with the appellant, for while it was the duty of the Circuit Judge to call the attention of the jury to any matters to which his mind had been directed by a proper request by appellant's counsel, yet it was in his discretion to refuse, and being so, we will not interfere with such action of the presiding judge.

As to the ninth ground of appeal. It is sufficient to state that this exception belongs to that class upon which this court has so often felt called upon to reflect, namely, the selection of a paragraph from the Circuit Judge's charge, disregarding the fact that his charge, when construed as a whole, will not sustain the intended criticism; for, in the judge's charge, just after the quotation that is made, he very fully gives the appellant the benefit of the disclosure of the whole law bearing upon his case. To this same class of exceptions belongs the 10th ground of appeal, for the judge here is charging the jury upon the law of this State regulating landlords' agricultural liens : there is no lien upon the crops given to owners of houses who may rent them to others. Of course, there is a lien by distress for rent in arrears, but it does not come within the purview of the law that the Circuit Judge was discussing in his charge to the jury.

As to the eleventh ground of appeal. The indictment was intended to cover a case under section 2515 of the General Statutes. The offence was charged in the language of the statute, and this course, under our decisions, is ·approved.

The complaint here made is that inasmuch as the indictment charged that the sale of the seed cotton under lien was "without the written consent of the lienee," the proof at the trial should have established the absence of such "written consent." The decisions of this court since the case of *State* v. *Geuing*, 1 McCord, *574, have not so held. See *State* v. *Hall*, 2 Bail., 151; *Information* v. *Oliver*, 21 S. C., 318; *State* v. *Cardoza*, 11 *Id.*, 195; 1 Greenl. Evid., § 79. This objection must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.