[L. A. No. 15256. In Bank.—April 30, 1936.]

BURON FITTS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Harold Judson, Jack Gilchrist, Joseph Scott, Jerry Giesler, Roland G. Swaffield and Walter K. Tuller for Petitioner.

Everett W. Mattoon, County Counsel, S. V. O. Prichard, Deputy County Counsel, Clyde C. Shoemaker and Joseph L. Lewinson for Respondent.

CURTIS, J.—In the above entitled proceeding it is sought to procure a writ of prohibition to restrain the respondent court from proceeding in a cause now pending therein. In December, 1934, the grand jury of Los Angeles County returned and filed in the respondent court what purported to be an accusation under the provisions of section 758 of the Penal Code, praying for the removal from office of the petitioner as district attorney of that county. Thereafter petitioner filed certain motions in the respondent court to quash and set aside said accusation. These several motions were based, in part, upon certain contentions having to do with the asserted illegal and unconstitutional formation of the grand jury and its subsequent impropriety in permitting an unauthorized person to appear before it. However, in view of the full presentation of these several contentions in another proceeding, numbered in this court, S. F. No. 15377, they were not argued at length before the respondent court nor are they presented in detail in the briefs filed in this proceeding. It is petitioner's request that these contentions be considered and determined upon the arguments submitted in relation thereto in the cited proceeding. Therefore, upon the authority of the decision in proceeding numbered S. F. 15377 (*Fitts* v. *Superior Court*, 4 Cal. (2d) 514 [51 Pac. (2d) 66, 102 A. L. R. 290]), and for the reasons therein stated, it must be held that these several contentions of petitioner do not warrant the issuance of a writ of prohibition.

The sole issue presented in detail to the respondent court in support of the motions therein made to quash and set aside the accusation, and the only point here to be determined, has to do with the validity of such an accusation when found and returned by only eleven grand jurors. The respondent court declined to hear any evidence tending to establish, as a fact, that the accusation for removal of petitioner from office had been returned by only eleven grand jurors but, for the purpose of the motions, it assumed such to be the fact. It

thereupon concluded, upon a consideration of the authorities, that such an accusation may be returned by the vote of eleven grand jurors, and that the concurrence of twelve, essential to the return of an indictment, is not indispensable. This proceeding in prohibition was thereupon commenced to stay further proceedings in the respondent court upon the theory that it was without the jurisdiction of the grand jury to return an accusation for removal from office in the absence of the concurrence of at least twelve members of that body and that such an accusation returned by a lesser number failed to confer jurisdiction upon the respondent court.

In support of this position it is urged, in substance, that our state Constitution employs the words ''grand jury'' without definition or limitation; that these words must therefore be construed to have reference to the common-law grand jury; that at common law the rule requiring the concurrence of at least twelve grand jurors was as definitely settled as the rule requiring unanimity upon the part of a petit jury; and that a misdemeanor in office warranting the removal of a public officer under section 758, *supra,* constitutes a public offense for the prosecution of which an accusation must be returned by at least twelve grand jurors.

By way of reply to petitioner's contentions, the respondent court argues that our grand jury is not the one known to the common law, but is a statutory body; that the constitutional history of this state indicates that the legislature has plenary power to provide a special statutory procedure for the removal of public officers; that an accusation differs materially from an indictment, and that in the absence of express statutory requirement to the contrary an accusation may be returned upon the concurrence of eleven members of the grand jury.

We do not propose to discuss at length the propriety of the remedy of prohibition nor the rule announced thereon in the case of *Bruner* v. *Superior Court,* 92 Cal. 239 [28 Pac. 341]. This subject received considerable attention in our decision in proceeding numbered S. F. 15377, *Fitts* v. *Superior Court, supra.* ▆ If, as contended by petitioner, an accusation for removal from office may not be returned by less than twelve members of the grand jury, the accusation here returned would represent an excess of jurisdiction upon the part of that body which would not confer jurisdiction upon

the respondent court to remove petitioner from office. This, of course, would warrant the issuance of a writ of prohibition. We turn, therefore, to a discussion of the validity of an accusation returned by eleven grand jurors.

 Section 18 of article IV of the state Constitution provides, in part, that certain officers shall be liable to "impeachment for any misdemeanor in office" and that "all other civil officers shall be tried for misdemeanor in office in such manner as the legislature may provide". In our opinion, the latter part of this constitutional provision must be so construed as to confer upon the legislature the power to determine all matters, including preliminary procedural steps, essential to accomplish the objective, there anticipated, that certain civil officers be "tried" for misdemeanor in office. (*In re Marks*, 45 Cal. 199, 218; *Woods* v. *Varnum*, 85 Cal. 639, 645 [24 Pac. 843]; *Matter of Shepard*, 161 Cal. 171, 174 [118 Pac. 513]; *Cline* v. *Superior Court*, 184 Cal. 331, 337, 338 [193 Pac. 929].) This is the only reasonable construction that may be given to the provision. Any other interpretation would be narrow and abortive. Particularly is this so, when we consider that the state Constitution, as distinguished from the federal Constitution, does not constitute a grant of power, or an enabling act, to the legislature, but rather constitutes a limitation upon the powers of that body. It follows, therefore, that we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited. In other words, unless restrained by constitutional provision, the legislature is vested with the whole of the legislative power of the state. (*Macmillan Co.* v. *Clarke*, 184 Cal. 491 [194 Pac. 1030, 17 A. L. R. 288]; *Mitchell* v. *Winnek*, 117 Cal. 520, 525 [49 Pac. 579]; *Jensen* v. *McCullough*, 94 Cal. App. 382, 394 [271 Pac. 568]; *People* v. *Rinner*, 52 Cal. App. 747, 749 [199 Pac. 1066].) To construe the cited section of the Constitution as a grant of power would lead to the anomalous conclusion that the legislature, though empowered to prescribe the "manner" in which officers shall be "tried" for removal from office, is powerless to prescribe how such a proceeding may be brought to the place and time of trial. We hesitate to ascribe such shortsightedness to the framers of our Constitution. Moreover, *People* v. *Bird*, 212 Cal. 632, 643 [300 Pac. 23], after referring to the constitutional debates, declares that "It was finally

decided to continue the grand jury system and provide for the alternative method of prosecution by information preceded by an examination and commitment by a magistrate, the *procedure in either case to be left to legislative control*".

In view of our conclusion, that the legislature may prescribe the procedural steps, including the manner of pleading, essential to a prosecution for removal for misdemeanor in office, it becomes necessary to ascertain whether, and in what manner, it has spoken. Section 940 of the Penal Code declares that "an indictment cannot be found without the concurrence of at least twelve grand jurors". A similar provision (section 931) regarding "presentments" was repealed in 1905 along with the remaining sections of the chapter on presentments. ■ An accusation under section 758, *supra,* is not an indictment. (*In re Burleigh,* 145 Cal. 35 [78 Pac. 242].) We are therefore here not concerned with the requirement of a concurrence of twelve under section 940, *supra.* Nor is an accusation a presentment—the latter type of pleading having been omitted from the Constitution of 1879 and all statutes dealing therewith having been repealed in 1905.

■ Section 758 of the Penal Code reads as follows: "An accusation in writing against any district attorney, county, township or municipal officer for wilful or corrupt misconduct in office may be presented by the grand jury of the county for or in which the officer accused is elected or appointed". As appears therefrom the section is silent as to the number of jurors who must concur in order to return a valid accusation. No other section of the code, nor does any statute of this state, fix the number of grand jurors who must concur in order to return an accusation. It is contended by respondent court that under such circumstances the general provisions of section 7, subdivision 17 of the Penal Code are applicable which provide that "Words giving a joint authority to three or more public officers, or other persons, are construed as giving authority to a majority of them, unless it be otherwise expressed in the act giving authority". This section of the code and its relation to the action of a grand jury was discussed by the court in the case of *Coffey* v. *Superior Court,* 2 Cal. App. 453 [83 Pac. 580]. That case involved an accusation presented by a grand jury against petitioner, who was chief of police of the City of Sacramento. The accusation was concurred in by fourteen members of a

grand jury consisting of nineteen jurors. It was contended by petitioner that a concurrence of the whole nineteen members of the grand jury was necessary before a valid accusation could be presented. In passing upon this contention the court, after analyzing a number of authorities upon the subject, stated that, ''No case has been cited, and we have found none, holding that all members of a grand jury must concur before an indictment can be found where the grand jury was composed of more than twelve and the law was silent as to the number necessary to make the accusation''. The court then proceeds to discuss the effect of section 7, subdivision 17 of the Penal Code and while it expresses an opinion that under this section a majority of the grand jurors may present an' accusation, it expressly refused to place its decision upon that ground, and concludes its opinion by stating, ''We prefer to place our decision on the ground first above stated, and that upon a concurrence of twelve or more of the grand jury legally formed a valid accusation may be presented''. As the only question in that case was whether an accusation concurred in by fourteen jurors, out of a grand jury of nineteen members, was a valid accusation it seems clear that what the court had to say regarding the power of a majority of the grand jurors to present an accusation was merely *dicta*. The case of *People* v. *Hunter*, 54 Cal. 65, although the opinion therein does not refer to section 7, subdivision 17 of the Penal Code, or any statute analogous thereto, is also relied upon by the respondents. In that case an indictment found by twelve members of the grand jury was held valid, although owing to death or absence of one or more of its members, the jury consisted of less than nineteen members at the time the indictment was returned. The defendant in that case contended that the full number of nineteen must be present at the finding of the indictment in order to give validity to the indictment. We find nothing in that case, when we consider the facts upon which the decision therein was rendered, that is of any assistance in the decision of the question now before us. In each of these two cited cases, the accusation in the one and the indictment in the other was concurred in by twelve or more of the grand jurors.

A case that sheds some light upon the question of whether the general section of the Penal Code (section 7, subdivision 17) is applicable to a body like the grand jury is the case

of *People* v. *Lensen,* 34 Cal. App. 336 [167 Pac. 406]. In that case an indictment was presented by a purported grand jury consisting of eleven men and eight women. At that time, section 19 of the Code of Civil Procedure provided that, "A grand jury is a body of men, nineteen in number, returned in pursuance of law, from the citizens of a county", etc. Upon arraignment the defendant moved to set aside the indictment on the ground that the indictment was not found, indorsed, and presented as prescribed by law. In support of his motion, he contended that a grand jury could be composed of men only and that a body purporting to act as a grand jury and which consisted of only eleven men and eight women, although all members of the jury were present and concurred in finding the indictment, was not a legal grand jury. His motion was denied, but on appeal the judgment was reversed on the ground stated in his motion. The attorney-general, in an effort to sustain the indictment, relied upon section 7 of the Penal Code, which provides that "Words used in the masculine gender include the feminine and neuter", and similar sections in other codes, but the court held that these general sections of the code were not applicable to the term "men" as found in section 192 of the Code of Civil Procedure defining a grand jury, and that the term "men" as used in said section was not used in its generic sense as including "women". In that case, the District Court of Appeal at great pains traced the history of the grand jury from its early beginnings and pointed out that the general provisions of section 7 of the Penal Code were not applicable That case, therefore, in interpreting a statute as applicable to the grand jury, held that the meaning of the terms used therein was controlled by the historical background of the law and customs under which the grand jury system as an integral part of our criminal procedure had been developed into its present status rather than the general provisions of any present-day code sections.

If we trace the judicial history of the grand jury system, we arrive at but one conclusion as to the number of jurors required to present an indictment, and that number is twelve. In discussing the grand jury system, Blackstone makes the following statement: "As many as appear upon this panel are sworn upon the grand jury to the amount of twelve at least, and not more than twenty-three; that twelve may be a ma-

jority''. (4 Blackstone's Commentaries, p. 302.) In respect to the returning of an indictment, this eminent authority further says: ''But to find a bill there must at least 12 of the jury agree; for so tender is the law of England of the lives of the subjects that no man can be convicted at the suit of the King of any capital offense unless by the unanimous voice of 24 of his equals and neighbors; that is, by 12 at least of the grand jury, in the first place assenting to the accusation, and afterwards by the whole petit jury of 12 more finding him guilty upon his trial. But if 12 of the grand jury assent, it is a good presentment though some of the rest disagree''. (4 Blackstone's Commentaries, p. 306.) In the first of the foregoing statements the inference is irresistible that a grand jury may consist of any number more than twelve and not exceeding twenty-three, and that the maximum number is fixed at twenty-three ''that twelve may be a majority''. We find no room for the contention that the number of twelve was fixed because it was a majority of twenty-three for the reason that the jury might consist of a lesser number than twenty-three, even as low as twelve, in which case a much less number than twelve would. be a majority. It seems perfectly clear to us that twelve was fixed as the number empowered to return an indictment, and the panel was limited to twenty-three for twelve would not be a majority of any number in excess of twenty-three. In the second of the statements quoted from the works of Blackstone we find the direct declaration made that ''to find a bill there must be at least 12 of the jury agree''. The author then goes on to explain why twelve members of the grand jury must agree before a true bill is found, and his explanation is ''that no man can be convicted at the suit of the King of any capital offense unless by the unanimous voice of 24 of his equals and neighbors, that is, by 12 at least of the grand jury in the first place assenting to the accusation, and afterwards by the whole petit jury of 12 more finding him guilty upon his trial''. So as not to leave any question as to his meaning, the author further states, ''But if 12 of the grand jury assent, it is a good presentment, though some of the rest disagree''.

That a grand jury as it originally existed might consist of any number between twelve and twenty-three, but that at least twelve jurors must agree before a true bill or indictment was found is borne out by an early work, entitled ''Complete

Jurymen'' by A. Miller, published in 1752, in which we find the following statement (p. 12): ''The number of a grand jury must be more than 12, and generally an odd number as 17, 19 or 21 is sworn to prevent the inconvenience of an equal number of voices upon a division to retard their finding or not finding a bill though 12 of them at least must agree to the finding of every bill of indictment otherwise it is void.''

The views of Sir Edward Coke on this subject are stated as follows:

''And it seemeth to me, that the law in this case delighteth herself in the number of 12; for there must not only be 12 jurors for the trial of matters of fact, but 12 judges of ancient time for trial of matters of law in the Exchequer Chamber. Also for matters of state there were in ancient time 12 Counsellors of State. He that wageth his law must have 11 others with him which think he says true. And that number of 12 is much respected in Holy Writ, as 12 apostles, 12 stones, 12 tribes, etc.'' (Co. Litt. 13th ed., Second Book, chap. 12, sec. 234.)

The Supreme Court of Iowa in an early decision discussed the number of grand jurors required by the common law to form a legal body and the probable reason for the requirement that more than 12 be summoned, and that a greater number than 12 be selected to compose the grand jury. In that decision the court said: ''The requiring of twenty-three to be summoned, though we have found no reasons stated in the books, was probably in order to make sure of obtaining a full jury of twelve; possibly to be sure of having a few over, so that if the accused should have a friend or two upon the panel, the course of justice might not be defeated; possibly to prevent a dissolution of the jury by the death or sickness or absence of one or more of the jurors, or it may be for all of these reasons combined.'' (*State* v. *Ostrander,* 18 Iowa, 435, 443.) The same principle is announced in *State of Alabama* v. *Miller,* 3 Ala. 343, 344, where we find the rule stated in the following language:

''At the common law, although a grand jury might consist of twenty-three jurors, the concurrence of only twelve, was essential to the finding of a bill; and we find nothing in the books to authorize the belief, that the deliberation of a greater number, is to be considered as essential. The reason why grand juries, at the common law, were constituted with a greater number than twelve, most probably, was to prevent

the failure of criminal justice, that might otherwise have occurred by the dissolution of the grand jury, in consequence of the death or absence of one juror. If such a provision had ever been considered as essential to the liberty of the subject, we doubtless should have found it so stated; on the contrary, the variation of number, which was permitted, is persuasive, to show that the excess above twelve, was introduced only to guard against the difficulties which were obvious, if only that number was impanelled." Similar statements are to be found in *State* v. *Williams,* 35 S. C. 344 [14 S. E. 819], *Baldwin's Case,* 2 Tyler (Vt.), 473, *Commonwealth* v. *Sayers,* 8 Leigh (35 Va.), 722, 723; *State* v. *Davis,* 24 N. C. (2 Ired.) 153, *State* v. *Barker,* 107 N. C. 913 [12 S. E. 115, 10 L. R. A. 50], and *People* v. *Hunter,* 54 Cal. 65. In the last-cited case, this court used the following language: "The Common Law required that twenty-four should be summoned to attend on the grand jury; but not more than twenty-three were sworn, because of the inconvenience which might arise in case twelve, who were sufficient to find a true bill, were opposed by the other twelve, who should be against a finding." These authorities only bear out the construction which we have given to the statements quoted above from Blackstone—that is, that a grand jury can only act when twelve of their number agree and that while a grand jury might consist of a variable number, not less than twelve nor more than twenty-three, the limit of twenty-three was fixed for the reason that with a body in excess of that number, a person might be indicted by less than a majority of the jury. From the foregoing authorities, we conclude that under the common law the grand jury could only act upon the concurrence or agreement of twelve of their number.

The common law was adopted in this state at the meeting of its first legislature. Prior to that time the Constitution of 1849 had been adopted, which provided that, "No person shall be held to answer for a capital or other infamous crime . . . unless on presentment or indictment of a grand jury." The grand jury system is a product of the common law. The civil law made no provision for a body like the grand jury in its system of jurisprudence. The members of the first constitutional convention in providing for a grand jury must have had in mind the grand jury as known to the common law. This the respondents admit, but further

contend that the constitutional convention of 1879 adopted an entirely different system than the common law system provided for in the Constitution of 1849. We find nothing to justify this conclusion either in the Constitution or in the debate of the constitutional convention of 1879. The later Constitution provided for the prosecution of criminal actions, either by information after examination and commitment by a magistrate, or by indictment with or without examination. It also provided that a grand jury should be summoned at least once a year in each county. (Article I, section 8.) The convention of 1879, like the convention of 1849, by failing to make further provisions as to the grand jury left to the legislature all questions affecting the grand jury not expressly covered by the Constitution. The Constitution of 1879 did not attempt to change the historic character of the grand jury, and the system its members had in mind was evidently the same system that had come down to them from the common law. It is in no sense a statutory grand jury as distinguished from the common-law grand jury as claimed by the respondents. Practically the only change made by the Constitution of 1879 was to provide an additional system of prosecution for the higher grade of crimes, when before all such crimes were to be prosecuted by indictment of the grand jury. No change whatever was made in the grand jury system as such. The legislature was given no additional powers over the grand jury than those it had under the Constitution of 1849. We must conclude, therefore, that the Constitution of 1879 when it refers to the grand jury refers to it as it had always been known and understood prior thereto. As we understand respondent's argument it is that as the grand jury provided for by the later Constitution was not the common law jury, but as respondent denominates it a "statutory grand jury"; that the attributes which were conceded to attach to the former body were not possessed by the new body; and that as a consequence when the legislature provided by section 758 of the Penal Code that an accusation against certain officers "may be presented by the grand jury", that the "statutory grand jury" provided for by the Constitution of 1879 was the body in the minds of the members of the legislature and not the common law grand jury of historic origin. This being so, respondent argues the legislature never intended that the body which was given power to present an accusation should

be limited and controlled by the rules applicable to grand juries as previously known, and particularly that such a body was not bound by the rule that the accusation should be concurred in by twelve members of the grand jury. The force of this argument is entirely overcome when we consider that section 758 of the Penal Code, providing that an accusation may be presented by the grand jury, was adopted in 1872 under the Constitution of 1849, and some years prior to the adoption of the present Constitution. Whatever action the subsequent constitutional convention took in reference to the grand jury could have no effect upon the intent of the legislature in the enactment of a statute some years prior thereto. In our opinion, however, the intent of the legislature would have been the same had it acted subsequent to the adoption of the Constitution of 1879.

At the same session of the legislature at which section 758 and other sections of the Penal Code providing for removal of civil officers by accusation were enacted, sections 931 and 940 of the Penal Code were also enacted. Section 931 was repealed in 1905. It provided that a presentment could not be found without the concurrence of twelve grand jurors, and section 940 makes the same requirement in respect to the finding of an indictment. It might be argued that where the same legislature provided that twelve members of a grand jury must concur in finding a presentment or an indictment, and no mention was made of the number required to present an accusation, a different rule was intended, to be followed by the grand jury in the case of an accusation from that prescribed for the finding of a presentment or an indictment. This argument is not without some force. However, we do not consider it conclusive of the question. The industry of counsel has failed to inform us of a single instance in which, by constitutional declaration or by statutory enactment, a grand jury composed of twelve or more persons has been empowered to present an accusation except by the concurrence of twelve grand jurors. The same is true regarding the finding of a presentment, or an indictment. We have shown that the invariable rule as announced by the courts, and declared by learned law writers, is that twelve jurors must agree before a true indictment can be returned by a grand jury. We have been cited to no instance where a grand jury composed of twelve or more may act in any matter

without at least twelve of their number agreeing upon the action taken. This was the case when section 758 of the Penal Code was adopted. Had the legislature at the time of its adoption intended that a less number than twelve could act in presenting an accusation, it would have been a simple matter to have so stated. It seems incredible that if the legislature had intended to vary this time-honored rule, its intentions would have been left in doubt and uncertainty. It was embarking upon a hitherto unknown and untried course, and it is only reasonable that we should look for some express declaration of its intention to vary such rule before concluding that such was its purpose. It is conceded that no such express declaration can be found, and in our opinion none was implied.

Section 758 of the Penal Code is to be found in the original Penal Code adopted in 1872. It was in turn taken from the Criminal Practice Act adopted in 1851, and is in almost the exact language of section 70 of that act. The provisions of the act, substantially as now in force, have thus been a part of the criminal procedure of our state from our earliest history. The action of the grand jury involved herein is the first occasion, in so far as the records of our appellate courts disclose, where an attempt has been made to return an accusation, presentment or indictment with the concurrence of less than twelve members of the grand jury. This fact alone is a most convincing argument that the section has not been regarded by the profession of this state as making any change in the procedure governing the grand jury in the matter of presenting an accusation from that required in the finding of an indictment. Evidently the consensus of opinion has been, as it is now our opinion, that when the legislature in 1851, and again in 1872, conferred the power upon the grand jury of presenting an accusation, it intended that the jury in the exercise of this newly acquired authority should act as it had acted from time immemorial in all matters submitted for its consideration.

Let the peremptory writ issue as prayed for.

Langdon, J., Seawell, J., and Shenk, J., concurred.

WASTE, C. J., Dissenting.—I dissent.

The controversy here present arises solely from the fact that section 758 of the Penal Code, adding new powers to

the grand jury, which it did not possess under the common law, fails to prescribe the number of grand jurors who must concur in order to return a valid accusation. It merely provides that "an accusation . . . may be presented by the grand jury of the county. . . . " In view of the complete legislative silence on the question, why should we not turn to other recognized sources from which we gather knowledge sufficient to enable us to appraise the new situation imposed on the grand jury by the enactment of the section? Legislative enactment and judicial interpretation are not wanting for this purpose. The section (758) of the Penal Code based on the Criminal Practice Act (Stats. 1851, p. 219) was incorporated in the code in 1872. At the same time, there was enacted and incorporated in the same code section 7, defining certain terms in the senses in which they were to be used in the code, and wherein it was declared that

"The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

" . . . 17. Words giving a joint authority to three or more public officers *or other persons*, are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority." [Italics added.] Petitioner's contention that grand jurors are not "public officers" within the meaning of this section disregards the phrase "or other persons" immediately following. I do not find any merit in petitioner's contention that grand jurors do not exercise a "joint" authority, so as to give the section application to this proceeding. In reply thereto respondent urges that when the section was made a part of the Penal Code in 1872 there were only two groups—the grand jury and the State Board of Prison Directors—given "joint", or other, authority to which the section might possibly apply. I do not think the words "joint authority" appearing in the section should be construed in the limited manner urged by petitioner. Undoubtedly what was meant was to permit a majority to act on behalf of any group having authority to act as a body. This being so, and in the absence of express statutory provision to the contrary, I am of the view that eleven grand jurors, constituting a majority of the panel of nineteen, may validly return an accusation pursuant to section 758, *supra.*

This reasoning finds expression, indirectly at least, in the case of *Coffey* v. *Superior Court,* 2 Cal. App. 453, 459 [83 Pac. 580], wherein an accusation under section 758, *supra,* concurred in by fourteen members of the grand jury, was assailed as being invalid. The issue presented in that proceeding for a writ of prohibition was whether a lesser number than the full panel of the grand jury could return such an accusation. After declaring that it was not essential to the validity of an accusation that all members of the grand jury concur therein, the court said, so far as pertinent here, that ''There is a further reason which is urged in support of the accusation. Section 7, subdivision 17 of the Penal Code reads: 'Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it be otherwise expressed in the act giving the authority.' It is the rule generally that a private trust or agency must be executed by all, as in the case of arbitrators chosen to settle a private controversy, but Mr. Mechem also says, in his work on Public Offices and Officers, section 572: 'Where, however, a trust or agency is created by law, or is public in its nature and requires the exercise of deliberation, discretion or judgment, whether it be judicial or quasi-judicial in its character, the rule is otherwise, and while all of the trustees, agents or officers, except where the law makes a less number a quorum, must be present to deliberate, or, what is the same thing, must be duly notified and have an opportunity to be present, yet, except where the law clearly requires the joint action of them all, it is well settled that a majority of them, where the number is such as to admit of a majority, if present, may act and that their act will be deemed the act of the body.'

''The supreme court by the constitution of 1849 was composed of a chief justice and two associate justices, and it was provided that any two should constitute a quorum; but there was no provision as to the number necessary to pronounce a judgment, as was done by the amendments of 1862, when the number was increased to five, and by the constitution of 1879. Two justices, however, pronounced judgments, being a majority of the three. See discussions of the power of the court by a majority to pronounce judgments in certain matters in *Estate of Jessup,* 81 Cal. 408, at page 459 [22 Pac. 1028, 6 L. R. A. 594]. There have been many boards and

commissions created by statute whose functions were judicial or *quasi* judicial. These bodies have uniformly acted through the vote of a majority. . The board of railroad commissioners is a notable example. The constitution created the board to be composed of three [now five] members. Its powers are judicial as well as administrative and executive. A majority has many times, in most important matters, such as determining rates to be charged for freight and the like, expressed the will of the board. While this view of the law would seem to safely lead us to the conclusion that a majority of the grand jury may present an accusation under the provisions of Penal Code, section 758 et seq., and hence the present accusation was legally presented, we prefer to place our decision on the ground first above stated, and that upon the concurrence of twelve or more of the grand jury legally formed a valid accusation may be presented.''

The Coffey case, *supra,* 456, also states that ''The common law required that twenty-four should be summoned to attend on the grand jury; but not more than twenty-three were sworn, because of the inconvenience which might arise in case twelve, who were sufficient to find a true bill, were opposed by the other twelve, who should be against finding. (*State* v. *Davis,* 24 N. C. 153 . . . ; *State* v. *Miller,* 3 Ala. 343, 344; *State* v. *Brainerd,* 56 Vt. 532 [48 Am. Rep. 818]; *State* v. *Ostrander,* 18 Iowa, 435; 4 Blackstone's Commentaries, 302; 17 Am. & Eng. Ency. of Law, p. 1290.)'' Identical language is found in *People* v. *Hunter,* 54 Cal. 65, 66. This language tends to indicate that at common law the grand jury was a majority-controlled body. We had occasion to so declare in *People* v. *Thurston,* 5 Cal. 69, wherein it is declared: ''The appellant was indicted by a grand jury, composed of twenty-four persons. This was erroneous. The statute provides that twenty-four shall be summoned, but limits the number of those competent to act to twenty-three. This was the rule at common law; twenty-three only being taken of the twenty-four summoned, so that twelve might constitute a majority. See 4 Blackstone, 302. If more than twenty-three persons can hold an inquest of the county, there would be no limit to the number, and a party might be indicted by less than a majority of the jury, our statute having provided that twelve grand jurors may present an indictment.'' The portion of Blackstone referred to in the above quotation reads

as follows: "As many as appear upon this panel are sworn upon the grand jury; to the amount of twelve at the least, and not more than twenty-three; that twelve may be a majority."

Here, admittedly, a majority of the grand jurors (eleven of the nineteen) concurred in returning the accusation. I do not deem it necessary, therefore, to decide petitioner's purely hypothetical case that this conclusion will ultimately permit six grand jurors, representing a majority of a quorum, to return an accusation. That case is not now before the court.

It would therefore seem to follow that petitioner has not been deprived of any of his constitutional rights.

The applications should be denied and the alternative writ discharged.

Rehearing denied. Waste, C. J., voted for a rehearing.