THE STATE v. JOHN A. BARKER.

*Constitution—Grand Jury.*

1. A grand jury had a well-understood meaning at the adoption of our Declaration of Rights, and one of its most essential features was that the concurrence of twelve of its members was necessary to the finding of a presentment or indictment.

2. An act of the Legislature making the concurrence of nine sufficient is not authorized by the Constitution of North Carolina.

This was an Indictment for Perjury, tried before *Meares, J.,* at September Term, 1890, of the Criminal Court of NEW HANOVER County.

107—58

The defendant pleaded in abatement to the indictment, and it was admitted by the State, that when the bill was found there were only eleven members of the grand jury present, the twelfth grand juror having been excused by the foreman on account of his being a brother-in-law of the prosecutrix. Under the act of Assembly establishing the said Court, the number of the grand jury is fixed at twelve, and it is provided that the concurrence of nine of that body shall be sufficient to the finding of an indictment. Acts 1885, ch. 63.

His Honor overruled the plea, and the defendant excepted. The trial proceeded, and there was a verdict of "guilty."

Other exceptions were taken to the rulings of the Court in the course of the trial, but, as they are not passed upon in the opinion, it is unnecessary that they should be repeated.

*The Attorney General*, for the State.
*Mr. S. C. Weill*, for the defendant.

SHEPHERD, J —after stating the facts: "No freeman shall be taken or imprisoned or disseized or outlawed or banished or in any ways destroyed, nor will we pass upon him or commit him to prison unless by the legal judgment of his peers or unless by the law of the land" Such is the language of King John in Magna Charter, which instrument was called by Sir Edward COKE, "the charter of the liberties of the Kingdom upon great reason because, *liberos facit*, it makes the people free."

"To have produced it (says Sir James MACINTOSH), to have preserved it, to have matured it, constituted the immortal claims of England upon the esteem of mankind."

The particular provision which we have quoted, or its substance, is to be found in the Federal and various State Constitutions, and the great principles which it asserts are no less cherished in America than in the mother country.

It is true that "the law of the land," in respect to the trial of persons accused of crime, is not specifically defined, but it was so well understood in England in reference to the necessity of an indictment in capital felonies, that ERSKINE, in his speech in 1784 in defence of the Dean of St. Asaph, said, in the presence of the Judges of the King's Bench, "If a man were to commit a capital offence in the face of all the Judges of England, their united authority could not put him upon his trial; they could file no complaint against him even upon the records of the Supreme Criminal Court, but could only commit him for safe custody, which is equally competent to every Justice of the Peace. The grand jury alone could arraign him, and in their discretion might likewise finally discharge him by throwing out the bill with the names of all your lordships as witnesses on the back of it." So jealous of their liberties, however, were our North Carolina ancestors that they were not content with adopting the foregoing provision, but they were careful to further insert in their Declaration of Rights a particular definition of the general words, and also to extend the privileges conferred to all "criminal charges" whatever.

This they did by declaring "That no freeman shall be put to answer any criminal charge but by indictment, presentment or impeachment." In thus putting the construction of the general language beyond all controversy they wrought wisely and well, as the Supreme Court of the United States, in *Hertado* v. *California*, 110 U. S., 516, has recently held that the seemingly equivalent words, "due process of law," in the 14th amendment of the Constitution of the United States, did not deprive the State of California of the right to provide that a man could be put upon trial for his life upon "information" only. The declaration mentioned has always been a part of the fundamental law of North Carolina, and is to be found in our present Constitution in its full vigor and unaltered in any particular, except

as to petty offences, where the punishment cannot exceed a fine of fifty dollars or a term of imprisonment for thirty days; and even in these cases there is a right of appeal to the Superior Court, where they may be tried *de novo*.

It is conceded that the words "presentment and indictment" imply the existence of a grand jury, and that the provision referred to should be read as if those words had been included. This being undoubtedly true, we are now to inquire whether, under the Constitution, a bill of indictment can be found without the concurrence of at least twelve of the grand jurors.

Judge COOLEY, in his work on Constitutional Limitations (59), says that "Constitutions are to be construed in the light of the common law and of the fact that its rules are still in force. By this we do not mean that the common law is to control the Constitution, or that the latter is to be warped and perverted in its meaning, in order that no inroads, or as few as possible, may be made in the system of common law rules, but only that for its definitions we are to draw from that great fountain, and that, in judging what it means, we are to keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes." We think it can hardly be questioned that, when our first Constitution was adopted in 1776, the mode of prosecution upon the indictment of a grand jury was "a well understood system" among all English-speaking people, and especially in respect to the number requisite to the finding of a bill. Indeed, there seems not a dissenting voice among the authorities that the concurrence of twelve of the grand jury is necessary, although it has frequently been held that that body may consist of any number from twelve to twenty-three. Originally the body now called a grand jury consisted of only

twelve persons, and they were chosen for each hundred (Bracton, Book 3, p. 116), and an early Saxon law in Ethelred's reign (A. D. 978 to 1016) directed "that twelve thanes, with the Sheriff at their head, should go and, upon their oaths, inquire into all offences." Bennett (in his note to *Rex* v. *Marsh*, 33 E. C. L., 72) says that "in early times each jury presented only for its own hundred, and, when consisting of only twelve, *entire unanimity* was necessary to their action. But afterwards, in 42 Edward III (A. D. 1368), the Sheriff was directed to return, in addition to the usual number of twelve, a panel of Knights, which formed what was called '*le grande inquest.*' * * * Their duty was to present for the whole county instead of simply for the hundred, twelve being still required for a finding, in accordance with immemorial antiquity. * * * It never, however, reached higher than twenty-three, so that the original twelve might always remain a majority of the whole body, and be able to present on the same finding of the same number, as of ancient times. * * * That twelve continued to be the *minimum* number of a grand jury is equally clear; for as early as 14 Elizabeth in Clyncaird's case (Coke Eliz., 654) it was distinctly held that the grand jury could not consist of less than twelve, and that the indictment should show that it was upon the oath of twelve men." See also *State* v. *Symonds*, 36 Me., 128. The discriminating annotator is amply sustained by other authorities. Thus we find Sir Edward Coke (Coke Litt., 1266) defining an indictment to be "an accusation found by an inquest of twelve or more upon their oath," and to the same effect is Comyn's Dig. (indictment A) and 4 Hawks. P. C. (1 Book, 2 ch., 25). Sir MATTHEW HALE (2 P. C., 161) says that "if there be thirteen or more of the grand inquest, a presentment by less than twelve ought not to be," and Lord DENMAN (in *Rex* v. *Marsh*, *supra*) quotes, with approval, the words of the same author that "it may be the presentment was by a less number than

twelve, in which case it is not good." Sir WILLIAM BLACK-
STONE (4th vol. Com., 306) is equally explicit. He says:
" But to find a bill, there must at least twelve of the jury
agree; for so tender is the law of England of the lives of the
subjects that no man can be committed at the suit of the
King of any capital offence, unless by the unanimous voice
of twenty-four of his equals and neighbors, that is, by twelve,
at least, of the grand jury in the first place assenting to the
accusation, and afterwards by the whole petit jury of twelve
more finding him guilty upon his trial. But if twelve of the
grand jury assent, it is a good presentment, though some of
the rest disagree." See also 1 Whart. Crim. Law, § 465. In
addition to the foregoing authorities, we have the language
of NASH, C. J., in *State* v. *Moss,* 2 Jones, 69, that " every free
person charged with a criminal offence has a right to the
decision of twenty-four of his fellow-citizens upon the ques-
tion of his guilt: first, by a grand jury, and secondly,
by a petit jury, of good and lawful men." To the same
effect are the words of Judge GASTON in *State* v. *Davis,*
2 Ired., 158. He says that " there must be twelve at least,
because the concurrence of that number was *absolutely neces-
sary* to put the defendant on his trial. *King* v. *Inhabitants
of Southampton,* 2 Black. Reps., 718; 2 Burr, 1088; 1 Chit.
Crown Law, 705."

In the face of all these authorities, it is too plain for argu-
ment that whenever it was requisite that an indictment
should be found, the concurrence of twelve grand jurors was
absolutely necessary. In some of the States the Constitu-
tions provide for a less number, and in a few others it is
done without any constitutional warrant. Whether this is
necessary, says Thompson and Merriam on Juries, § 654,
" presents an interesting question which seems never to have
been satisfactorily determined."

There can be no doubt that the mode of procuring and
the qualification of grand jurors may be changed from time

to time, but we regard the concurrence of twelve in the find-ing of a presentment or indictment as a fundamental prin-ciple. It is urged that, if the Legislature can change the qualification of grand jurors, it is also competent for it to change the number necessary to the finding of a bill. It is sufficient to say, in answer to this argument, that such changes as to the qualification of petit jurors are also made from time to time, but no one, in this State at least, has ever had the hardihood to contend that a smaller number than twelve can make a constitutional petit jury. If the concur-rence of nine is sufficient, why, indeed, should not that of a lesser number—say two or three—be valid, and thus, step by step, what has always been considered as one of the greatest safeguards of the freedom of the citizen be broken down and swept away. We do not concur with those authors who say that, in a popular government, the grand jury is not as important as when used to protect the citizens from the tyranny and oppression of Kings. Experience has shown that, even in popular governments, the rights and privileges of the citizen may be ruthlessly invaded, and we are sure that our people are not prepared to adopt a precedent which, followed by others of a like character, will gradually pave the way to a total abrogation of one of the "greatest bul-warks of liberty."

It may be that, in the interest of convenience and economy in the trial of offences of a low grade, the accusation by pre-sentment or indictment should be dispensed with, and this has already been done, as we have seen, in respect to a cer-tain class of offences. Const., Art. 4, § 27. Whether it is wise to make any further exceptions is a question which is addressed to the people, but while the Constitution continues to require the intervention of a grand jury we must, in the absence of any provision to the contrary, uphold the system in its essential features as it existed and was understood by the authors of our Declaration of Rights.

That the concurrence of twelve is fundamental and cannot be altered by the Legislature, we have the language of this Court in *State v. Davis, supra.* Judge GASTON, after saying that the concurrence of twelve was absolutely necessary, proceeds as follows: "These great principles of the common law were brought over to this country by our ancestors, and, with an extension of their application to other offences, were, by the Constitution, made a part of our *fundamental law, and cannot be violated either by the judiciary or the Legislature.*"

In *State v. Moss, supra,* it is said by NASH, C. J., that "The power of the judiciary to adjudge an act of the General Assembly unconstitutional is too firmly established to be questioned"; and COOLEY (see Const. Lim., 46) states "that to do this is so plain, and the duty is so generally, and we may almost say universally, conceded, that we should not be justified in wearying the patience of the reader in quoting from the very numerous authorities upon the subject." Indeed, the judiciary of North Carolina were among the first to exercise this right (Dr. Battle's address on Supreme Court, appendix 103 N. C.); and, without such a check, says Daniel Webster (Works, vol. 3, p. 29), "no certain limitation could exist on the exercise of legislative power." Courts, however, should exercise this power with *great care,* for "every act of the Legislature must be presumed to be constitutional and within its authority, and is to be declared unconstititutional only when no doubt exists." *State v. Moss, supra.*

Entertaining no doubt that the Constitution contemplated a grand jury as it substantially existed at common law, and that one of its most essential features was that twelve, at least, of its members should concur in the finding of the bill, we must hold that so much of the act in question that dispenses with the concurrence of such a number is void.

The plea in abatement should have been allowed.

Error.