GILES ENGLISH, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where the county commissioners selected the number of two hundred and forty-eight names instead of from two hundred and ninety to three hundred and ten, to constitute a list from which grand and petit jurors are to be drawn, the presumption is, in the absence of any showing that they abused the discretionary powers conferred upon them by the statute, that they performed their duty.

2. In ascertaining the meaning of the terms in a statute or a constitution, it is not only proper, but necessary, that recurrence be had to the principles of the common law from which we derive the body of our municipal law.

3. The language of Section 10 of our Bill of Rights, that "no person shall be tried for a capital crime or other felony, unless on presentment or indictment by a grand jury, except as is otherwise provided in this Constitution, and except in cases of impeachment, and in cases in the militia when in active service in time of war, or which the State, with the consent of Congress, may keep, in time of peace," was designed as a guaranty and protection of the citizen against a trial in the enumerated cases in the Circuit Courts of this State, except upon presentment or indictment by such a grand jury as was known at the common law.

4. A grand jury at the common law was composed of not less than twelve, nor more than twenty-three persons, and the concurrence of twelve of this number was absolutely essential to the finding of an indictment.

5. The fifth section of the act of 1891, Chapter 4015, in so far as it provides that every grand jury shall consist of twelve persons, is constitutional; but the provision therein that the assent of eight of that number shall be necessary to the finding of indictments, is unconstitutional and void.

6. The fact that a section or a portion of a section of an act is unconstitutional, does not necessarily render the whole act void. If the legislative purpose as expressed in the valid portion of an act can be accomplished independently of the unconstitutional portion, and considering the entire act, it can not be said that the Legislature would not have passed the valid portion had it been known that the invalid portion must fail, effect will be given to so much as is good.

7. A venireman stated on his *voir dire* that he had formed and expressed an opinion in regard to the guilt or innocence of the accused, but that this opinion was not of a fixed nature, and that he would be governed by the evidence. In reply to a question from the defense the venireman stated that it would take evidence to change his opinion. The defense then chal-

lenged him for cause, and thereupon the court asked the juror if he would be influenced by the opinion he had, or would he be guided entirely by the evidence which would be permitted to go to him from the witness stand, and he answered that he would be governed by the evidence allowed to go to the jury by the court. The challenge for cause was then overruled and the juror challenged peremptorily by the defense: *Held*, No error in overruling the challenge for cause.

8. It is not error for the court to refuse to permit a plan of a building introduced in evidence to be sent to the jury room, unless all the evidence given in the case went with it.

9. Exceptions to the charges of court can not be taken primarily in the appellate court.

10. The evidence in this case held sufficient to sustain the verdict.

Writ of error to the Circuit Court for Brevard county.

The facts in the case are stated in the opinion of the court.

*Robbins & Graham and E. K. Foster* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted, tried and convicted during the Fall term, A. D. 1892, of the Circuit Court for Brevard county, of the crime of murder in the first degree, and the sentence of death passed upon him.

To the indictment the accused filed a plea in abatement alleging that he "ought not to be held to answer

the indictment herein found against him, for that the body presenting said indictment is not such a grand jury as is required by Section 10 of the Declaration of Rights in the Constitution of Florida, to indict for felonies, in that any eight persons of said jury are given the power to find an indictment;" and further, that he "ought not to be held to answer said indictment, because the jury list made by the County Commissioners, from which said jurors were drawn, consists of but 248 names, instead of from 290 to 310 names, as required by law." A demurrer of the State to this plea was sustained, and the questions arising under the first and third assignments of error relate to the correctness of the court's ruling on this demurrer.

It is not necessary for us to devote much space here to the second ground of the plea in abatement. What was decided in Reeves vs. State, 29 Fla., 527, 10 South. Rep., 902, is applicable to this ground of the plea, as the difference between the act of 1879 (Chapter 3123) under which that decision was made, and the act of 1891 (Chapter 4015, sec. 2, Appendix R. S., page 960) under which the grand jury in the present case was selected, is not such as to render the decision inapplicable to the latter act. We must presume that the County Commissioners performed their duty in selecting the number of 248 names as a jury list, in the absence of any showing that they abused the discretionary powers conferred upon them by the statute. This ground of the plea does not undertake to set up any such defense.

The tenth section of the Declaration of Rights in our Constitution of 1885 is, that "no person shall be tried for a capital crime or other felony, unless on presentment or indictment by a grand jury, except as is otherwise provided in this Constitution, and except in cases of impeachment, and in cases in the militia when in active service in time of war, or which the State, with the consent of Congress, may keep, in time of peace." Section 38 of Article V, reads as follows: "The number of jurors for the trial of causes in any court may be fixed by law, but shall not be less than six in any case."

By an act of the Legislature passed in 1891 (Chapter 4015, *supra*, sec. 5) it is provided that "every grand jury shall consist of twelve persons, and the assent of eight (8) of them shall be necessary to the finding of indictments." The grand jury that presented the indictment in the case before us was organized under this act. The first ground set up in the plea for abating the indictment is, that the grand jury presenting it is not such a body as is guaranteed by the Declaration of Rights, because eight of the number are authorized to find a true bill. It will be observed that the plea does not allege that only eight of the twelve grand jurors found the indictment, but that the grand jury is an illegal body, because eight of them are authorized to find the indictment. The Legislature has undertaken in the act referred to above to constitute a grand jury of twelve persons, and to authorize the finding of indictments with the concurrence of eight of

that number, and we are now called on to say whether
or not that can be done.   The inhibition of the exer-
cise of such legislative power, if it exists at all, must
be found in our Constitution.   We think it is clear
that Section 38 of Article V, above referred to, has
reference only to the number of jurors for the trial of
causes in the courts, and can have no bearing upon
the constitution or organization of grand juries.
What, then, is the guaranty to the citizen in the Bill
of Rights, that "no person shall be tried for a capital
crime or other felony, unless on presentment or indict-
ment by a grand jury," except in the cases mentioned?
In ascertaining the meaning of these terms in our Con-
stitution it is not only proper, but necessary, that we
recur to the principles of the common law, from which
we derived not only our grand jury system, but in fact
the right of jury trial, as well as the body of our
municipal law.   In construing statutes in reference to
the qualification of jurors, Judge Starkey said, in the
case of Boyd vs. State, 1 How., 163 ; "As the law stood
at the time of the foundation of the federal govern-
ment, both the common and statute law of England re-
quired the possession of a freehold as necessary to
qualify a juror, and the right of trial by jury, being of
the highest importance to the citizen, and essential to
liberty, was not left to the uncertain fate of legislation,
but was secured by the Constitution of this and all
the other states as sacred and inviolate.   The question
naturally arises, how was it adopted by the Constitu-
tion?   That instrument is silent as to the number and
qualifications of jurors ; we must therefore call in to

our aid the common law for the purpose of ascertaining what was meant by the term jury. It is a rule that when a statute or the Constitution contains terms used in the common law, without defining particularly what is meant, then the rules of the common law must be applied in the explanation. The framers of the Constitution must have meant, therefore, to secure the right of trial by jury as it existed in England, either by statute or common law. The Legislature can not abolish or change substantially the panel or jury, but it may, it is presumed, prescribe the qualifications of the individuals composing it. Our statute nowhere defines the number necessary to constitute a jury ; but the number, twelve, known as the number at common law, is no doubt what is meant by the constitutions of all the states when a jury is mentioned." Judge Cooley, in his book on Constitutional Limitations, page 73, says : "It is also a very reasonable rule that a state Constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. By this we do not mean that the common law is to control the Constitution, or that the latter is to be warped and perverted in its meaning in order that no inroads, or as few as possible, may be made in the system of common-law rules, but only that for definitions we are to draw from that great fountain, and that in judging what it means, we are to keep in mind that it is

not the beginning of law for the state, but that it assumes the existence of a well-understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes." The rule of constitutional construction stated by the eminent judges from whom we have quoted above is unquestionably sound, and has been generally followed by state courts in the interpretation of their constitutions. See State vs. Barker, 107 N. C., 913.

The language, "no person shall be tried for a capital crime or other felony unless on presentment or indictment by a grand jury, except" in the cases mentioned, standing out so prominently as it does in our Declaration of Rights, was designed as a protection to the life and liberty of the citizen, and as a guaranty against trial in the enumerated cases, except upon presentment or indictment by such a grand jury as was known at the common law. We think this is the meaning of the Declaration of Rights when it refers to a presentment or indictment by a grand jury in the Circuit Court. What, then, was a grand jury at common law? Anciently, it seems, this body consisted of only twelve persons, but in later times it was composed of not less than twelve and not more than twenty-three, and the concurrence of twelve was absolutely essential to the finding of an indictment. 5 Bacon's Abr. *Indictment* (C); *Ibid, Juries* (B); Gladden vs. State, 12 Fla., 562; Gibson vs. State, 16 Fla.,

´291. The language of Dixon, C. J., in the case of Brucker vs. State, 16 Wis., 255 so clearly expresses the law on this point that we quote it. He says : "The ·objection which was raised by plea in abatement is, that under Section 8, Article 1 of the Constitution, 'no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, etc., and that a grand jury can not be constituted of less than twenty-three persons, or that if a smaller number may be actually sworn, still it is incompetent for the Legislature to declare by statute that less than twenty-three shall be drawn and summoned. The foundation of the ·objection is, that this was the rule at common law rec-·ognized by the Constitution, against which the Legislature has no power to provide. Upon examination of the authorities, we find no such fixed common law principle. The only inflexible rule with respect to numbers seems to have been that there could not be less than twelve nor more than twenty-three jurors. The concurrence of twelve was necessary to find a bill, and there could not be more than twenty-three, in order that twelve might form a majority." Citing Hawkins' P. C., B. 2, C. 25, sec. 16 ; 2 Hale's P. C., 161 ; 3 Blackstone, 576, note ; 1 Chitty's Crim. Law., 306 ; 4 Bacon's Abr., *Indictment*, (C), (B), and *Juries*, (A). "Within these limits the number was indeterminate and immaterial. There might be more or less, and still constitute a good jury. From a note (4 Bacon's Abr., *Juries*, (a), it appears that the grand juries re-

turned to serve on the King's Bench in Middlesex consists of sixteen, seventeen or more. We are of opinion, therefore, that it is competent for the Legislature, within the limits prescribed by the common law, to increase or diminish the number of grand jurors to be drawn and returned, without infringing the rights of the accused granted by the Constitution."

A careful examination of this subject leads us to the conclusion that it required not less than twelve, nor more than twenty-three, jurors to form a grand jury at common law, and that not less than twelve of the number must concur in finding the indictment in the Circuit Court. This matter is thoroughly reviewed, and authorities cited, in the case of State vs. Barker, *supra*. Such a grand jury, we think, is within the contemplation and meaning of the language of our Declaration of Rights, that no person shall be tried for a capital crime or other felony, unless on presentment or indictment by a grand jury, except in the cases mentioned.

The act of 1891, sec. 5, *supra*, provides that every grand jury shall consist of twelve persons, and to this extent the act is constitutional; but it also provides that the assent of eight of the twelve shall be necessary to the finding of indictments. The Constitution, as we have seen, contemplated a grand jury of not less than twelve, nor more than twenty-three persons, twelve of whom must concur in the finding of indictments. The Legislature, then, has no authority to authorize less than twelve of the grand jury to find an

indictment.　If it can authorize eight to present a bill, it may authorize four, or any other of the number, to do so, and thus the guaranty of the Constitution might be swept entirely away.

The plea in abatement does not allege that only eight of the grand jury found the indictment in the case before us, or that any number less than the twelve concurred therein.　The ancient practice of reciting in the caption of the indictment that twelve of the panel concurred in the presentation thereof, is not now in use, but the legal presumption is that an indictment properly endorsed and regularly returned into court was concurred in by the entire body.　Law's Case, 4 Greenleaf, 439.　Unless, therefore, the clause in the statute that eight of the grand jury shall be necessary to find an indictment, vitiates the entire section, the demurrer to the plea in abatement was properly sustained.　The fact that a section or a portion of a section of an act is unconstitutional does not necessarily render the whole act void.　If the legislative purpose as expressed in the valid portions of the act can be accomplished independently of the unconstitutional portion, and considering the entire act, it can not be said that the Legislature would not have passed the valid portion had it been known that the invalid portion must fail, effect will be given to so much as is good.　State *ex rel.* vs. Brown, 19 Fla., 563 ; State *ex rel.* vs. J., T. & K. W. Ry. Co., 20 Fla., 616.　One evident purpose of the act of 1891, *supra*, was to re-

duce the number of the grand jurors to twelve, and this the Legislature had an undoubted right to do. If that provision found in the fifth section of the act, that the assent of eight of the jury shall be necessary to the finding of indictments, be entirely eliminated, as must be done, it will not prevent the accomplishment of the manifest purpose in reference to the constitution of the grand jury as provided in the other valid portions of the act ; nor do we think that it can be said that the Legislature would not have passed this act if it had been known that the purpose in reference to the assent of only eight, contained in the fifth section, could not have been carried out.

The Legislature of North Carolina passed an act in 1885 to establish a Criminal Circuit Court, to be composed of the counties of New Hanover and Mecklenburg, and directed that the County Commissioners of each of said counties, at least twelve days before the regular terms of court to be held therein, to draw the names of thirty-six jurors to serve as grand and petit jurors for the term. It also provided that at the term of court "there shall be drawn by a boy of ten years of age, or under, twelve jurors from said number of thirty-six jurors drawn as aforesaid, who shall constitute a grand jury for said court, nine of whom shall be necessary to agree before a bill of indictment shall be returned as true." In State vs. Barker, *supra*, where it appeared that one of the grand jury was excused on account of relationship to the prosecutrix, and hence only eleven participated in the finding of

the bill, it was held that it took twelve to constitute a grand jury, and so much of the act as made the concurrence of nine jurors sufficient to find a bill was unconstitutional. The opinion of the court says: "Entertaining no doubt that the Constitution contemplated a grand jury as it substantially existed at common law, and that one of its most essential features was that twelve, at least, of its members should concur in the finding of the bill, we must hold that so much of the act in question that dispenses with the concurrence of such a number is void." This being the case, it follows that the court did not err in sustaining the demurrer to the plea in abatement.

The second assignment of error is, that "the court erred in ruling that the venireman Wade Harris was a qualified juror, he having stated that he had formed an opinion, and that it would require evidence to change it." The venireman Wade Harris stated that he had formed and expressed an opinion in regard to the guilt or innocence of the accused, but that the opinion was not of a fixed nature, and that he would be governed by the evidence. In reply to a question by the defense the juror stated that it would require evidence to change that opinion. The defense then challenged him for cause, and thereupon the court asked the juror if he would be influenced by the opinion he had, or would he be guided entirely by the evidence which should be allowed to go to him from the jury box. His answer was: "I would be governed by the evidence allowed to come to the jury by the

court." The challenge for cause was overruled, to which defendant excepted, and he then challenged the juror peremptorily. There was no error in the ruling of the court in reference to the competency of this juror. In O'Connor vs. State, 9 Fla., 215, this court quotes with approbation the following language: "The true doctrine is, that if the juror's conceptions are not fixed and settled, nor warped by prejudice, but are only such as would naturally spring from public rumor or newspaper report, and his mind is open to the impressions it may receive on the trial, so as to be convinced according to the law and the testimony, he is not incompetent." *Vide*, also Montague vs. State, 17 Fla., 662. The distinction as to what state of mind in reference to a preconceived opinion will disqualify a juror, is drawn in Andrews vs. State, 21 Fla., 598. The juror here does not state upon what he formed his opinion, but he does state that it was not of a fixed nature, and he would be governed by the evidence. The test of his competency exists in the fact, as disclosed here, that the opinion which he had formed was such as to yield readily to the evidence which should be given from the witness stand.

The fourth error assigned is, that the court erred "in refusing to allow the plan of the building in which the shooting took place, and which had been introduced in evidence, to be sent to the jury room when sent for by the jury." The testimony locates the scene of the killing at a certain house with adjoin-

23

ing rooms as separate departments, and the conduct and action of both the accused and the deceased in and about this building at and just before the tragedy, were described by the witnesses. A diagram or plan of the house, after being verified as being correct by the person who drew it, was introduced in evidence and explained to the jury. Some time after the jury retired to consider of their verdict they sent for the plan of the building, and thereupon the State Attorney objected to sending it unless all the evidence was also sent to them. The court sustained this objection, and defendant excepted. No authority is cited by plaintiff in error on this point. We do not think the court erred in refusing to allow the plan to be sent to the jury room. It is not necessary that we go into a discussion of the subject as to whether or not a party has the right in a criminal case to have testimony or documents and papers introduced in evidence to accompany the jury in their consultation room. Whether or not this would be proper in any case, we need not now say. The ruling of the court in the present case was not against the right of the jury to have the entire evidence, but only that the plan could not go, unless all the evidence accompanied it. Without saying that it would be proper for the jury in such a case to have all the evidence, we think the judge did not err in refusing to allow the same to go to them in the jury room, without the evidence with it. Ramforth vs. People, 61 Ill., 365.

Another assignment of error is, that the court erred in refusing the third charge requested by the defend-

ant.    The record shows that the plaintiff in error re-
quested the court to give the charge referred to, and
that the court refused to give it, but it nowhere appears
that any exception was taken to the ruling of the
court in reference to this charge.    The plaintiff in er-
ror not only did not except at the time to the refusal
of the court to give the charge, but did not take any
such exception in his motion for a new trial.    In ac-
cordance with our settled rule on this subject we can-
not consider this assignment of error.    Richardson vs.
State, 28 Fla., 349, 9 South. Rep., 704.

The only remaining assignment of error is, that the
court erred in denying the motion for a new trial, and
the only question presented by this motion is as to
the sufficiency of the evidence to sustain the verdict.

We will not set out the testimony found in the bill
of exceptions, as it would prolong the opinion un-
necessarily ; nor will we enter into any extended dis-
cussion of it.    The testimony has been carefully ex-
amined and considered.    If that introduced by the
State, and especially the testimony of Azariah Robin-
son, taken in connection with the undisputed evidence
in reference to the character of the pistol ball that
caused the death of the deceased, is true, the verdict
of murder in the first degree should be sustained.    On
the contrary, if the testimony of the witnesses for the
accused be accepted as true, the verdict should not be
for a higher offense than manslaughter.    Upon the
jury devolves the responsibility, as well as the right to
determine the credibility of witnesses, and the weight

of the evidence. They have determined these questions against the accused. We can not disturb their verdict on the testimony before us, sanctioned as it is by the presiding judge, without invading the province of the jury, and the judgment of the. Circuit Court must therefore be affirmed.

Judgment entered accordingly.